**COCA–COLA CO. v. SNOW CREST BEVERAGES, Inc.**

No. 4196.

Circuit Court of Appeals, First Circuit.

June 10, 1947.

Pope F. Brock, of Atlanta, Ga. (Hugh D. McLellan, John T. Noonan, Henry L. Mason, Jr., and Herrick, Smith, Donald, Farley & Ketchum, all of Boston, Mass., and Frank Troutman and Daphne Robert, both of Atlanta, Ga., on the brief), for appellant.

Arthur E. Whittemore, of Boston, Mass. (Arthur D. Thomson and Joseph P. Healey, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a decree dismissing a complaint alleging infringement of a registered trade-mark and unfair competition. Federal jurisdiction therefore rests upon 15 U.S.C.A. § 97 as to both grounds alleged in support of the cause of action asserted, i. e., interference with the plaintiff's exclusive right to use its registered trade-mark. See Armstrong Co. v. Nu-Enamel Corp., 305 U.S. 315, 324, 325, 59 S.Ct. 191, 83 L.Ed. 195. Furthermore, as will appear from our statement of the facts, federal jurisdiction over the ground of unfair competition may also be rested upon diversity of citizenship and amount in controversy.

The plaintiff-appellant, The Coca-Cola Company, a Delaware corporation, is the owner of the trade-mark "Coca-Cola," registered in the United States Patent Office in the years 1893, 1905, 1925, twice in 1928 and again in 1945. It also registered its mark in Massachusetts in 1919. For a great many years it has manufactured and sold in interstate commerce the soft drink syrup from which its familiar dark reddish-brown beverage is made. The tens of millions of dollars it has spent over the years in advertising its product under the name "Coca-Cola" have created an enormous public demand for the beverage.[1] Obviously, as the court below found, the value of its mark is far in excess of $3,000.

The plaintiff sells the syrup which it manufactures in two ways. It sells approximately 20% of its product to independent wholesalers or jobbers who sell it to soda fountain operators who in turn mix the syrup with carbonated water and dispense the beverage by the glass. Its business in this "fountain syrup" as it is called is without significance in the case at bar. It sells the major part of its syrup to six so-called "parent bottlers",[2] each of which has exclusive resale rights in a particular territory, and these in turn resell to local bottlers having exclusive franchises in their respective sub-territories.[3] These local bottlers mix the syrup with carbonated water, package the combination in distinctive 6 oz., somewhat hourglass shaped, bottles into the glass of which the trade-mark "Coca-Cola" in script is blown, and sell the bottled product to retail out-

---

[1] It is said that it now sells enough Coca-Cola syrup annually in the United States alone to provide every man, woman and child in the country with approximately 60 drinks of the beverage, and that in 1944 it sold its billionth gallon of syrup, each gallon making approximately 120 drinks.

[2] Two of these are wholly owned subsidiaries of The Coca-Cola Company.

[3] There are 1050 local bottlers in the United States, over 1000 of which are independently owned.

lets such as stores, bars, taverns, restaurants, etc. For over 20 years the plaintiff has made extensive use of the phrase "Delicious and Refreshing" in its advertising.

The defendant-appellee, Snow Crest Beverages, Inc., is a Massachusetts corporation which was organized in 1930 for the purpose of incorporating a business carried on since 1923 by one Berkowitz under the name Snow Crest Beverage Company. Originally Berkowitz manufactured only pure fruit flavored carbonated beverages which he sold in 7½ oz. and quart size bottles under the trade name "Snow Crest". In 1929 he began to manufacture artificial flavored carbonated beverages which he sold in 7½ oz., 12 oz. and quart bottles under the trade name "Polar Cub". Berkowitz, and subsequently the defendant corporation, advertised its names, "Snow Crest" and "Polar Cub", through the usual media with the result that there has been built up a special association of these names with the defendant's products.

In 1935 the defendant added a cola type beverage to its line which is apparently indistinguishable from the plaintiff's Coca-Cola either by taste or color. It originally called this drink "Sno Kola", which it soon changed to "Sno Cola", and in 1937, without giving up this latter name, it began to put this beverage out also as "Polar Kola", changed a little later to "Polar Cola". It marketed this beverage in 7 oz., 7½ oz., 12 oz. and quart bottles, and on all of these bottles it used a crown, or cap, displaying the name "Polar Kola", later "Polar Cola", in white block letters on a narrow red band under a representation of a polar bear cub, which was the symbol it had long used in connection with its Polar Cub line of artificial fruit flavored beverages.

■ On its bottles it also affixed a paper label, predominately blue, white and orange in color, bearing a representation of a polar bear cub in an Arctic scene under the words "Polar Cola" in block letters. Upon these labels the beverage was described as consisting of flavor from the cola nut blended with natural flavors, cane sugar, carbonated water and caramel, and on them appeared the words "Delicious Re-

freshing". The label on the 7 oz. bottle carried the notation "individual size", that on its 12 oz. bottle "double size", and that on its largest size bottle "family size". The court below found that in view of the wide market for Coca-Cola the legend "double size" on the label of the defendant's 12 oz. bottle would be interpreted by the ordinary buyer of soft drinks to mean "double the size of a Coca-Cola bottle."

In 1940 the defendant began to bottle its Polar Cola in distinctive 28 oz. bottles of the same type that it had previously used in marketing some of its other products, and early in 1943 it discontinued all sales of Polar Cola except in bottles of this size and special type. Since 1944 it has sold these 28 oz. bottles virtually only to the bar and tavern trade in Massachusetts. It intends, however, as soon as sugar and other supplies become available, to resume its sales in smaller bottles to retail stores and to expand its business into interstate commerce.

■ Until 1944 the defendant's 28 oz. bottles were closed with the Polar Cola cap already described and carried a paper label displaying (1) the name Polar Cola in large white lettering approaching script in appearance on a red background, (2) the defendant's name as bottler in small letters, (3) a description of the contents, also in small letters, and (4) a prominent representation of an owl winking one eye next to the slogan "Get Wise—Giant Size". Since December 1944 it has used caps and labels on its bottles which by no stretch of the imagination could be said to have any resemblance to anything appearing in the plaintiff's advertisements, and it has called its beverage "Polar Cub" on the label and "Cubola" on the cap. It has retained the name "Polar Cola" on its trucks, however, and it says that the change in labeling of December 1944 was only to test consumer reaction. Furthermore, it is found as a fact that the defendant intends to revive the name "Polar Cola" for its product. This case, therefore, has not become moot since the defendant not only asserts but also intends to exercise what it claims to be its right to market its product in the way complained of whenever it may see fit to do so.

As already appears, the wrong complained of—interference with the plaintiff's exclusive right to use its mark "Coca-Cola" —is grounded upon allegations both of trade-mark infringement and unfair competition. Specifically the plaintiff contends that the defendant's name "Polar Cola" infringes its registered trade-mark "Coca-Cola"; that the defendant's use of the name "Polar Cola" constitutes unfair competition with the plaintiff; that the defendant's product, with its connivance and assistance, has been and is being widely passed off by retail dealers to consumers on orders for the plaintiff's product; that the defendant without satisfactory reason or excuse has imitated the plaintiff's "get-up" and the general appearance of its product; and that, by printing "Delicious Refreshing" on its labels the defendant has made use of the predominant parts of one of the plaintiff's well known trade slogans. We shall consider these contentions in the order enumerated after disposing of three matters of general application.

■ In the first place there is no question in this case with respect to the applicable law. Opposing counsel agree and the court below held, in conformity with its ruling in National Fruit Product Co. v. Dwinell-Wright Co., D.C., 47 F.Supp. 499, "that on the particular types of issues here involved there is no difference in the federal statutory rule, the federal common-law rule, the Massachusetts statutory rule and the Massachusetts common-law rule." Furthermore, it seems to be conceded, as it must be, that the legal test of trade-mark infringement is the same as the legal test of unfair competition and basically that test is the likelihood of consumer confusion as to the source of the goods. Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618, 622, 623; Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co., 1 Cir., 153 F. 2d 662, 665, certiorari denied 329 U.S. —, 67 S.Ct. 64. That is to say, the test to determine whether the defendant has violated the plaintiff's right to the exclusive use of its mark is to inquire whether the defendant has carried on its business in such a way as to make it likely that ordinary purchasers of its goods would confuse them with those of the plaintiff. And we have held in this circuit that this ultimate question of the likelihood of consumer confusion as to source is one of fact. Thomas Kerfoot & Co., Ltd., v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214, 215; Dwinell-Wright Co. v. National Fruit Product Co., supra, 140 F.2d 618, 623, and cases cited. In accord see also Warner & Co. v. Lilly & Co., 265 U.S. 526, 529, 44 S.Ct. 615, 68 L.Ed. 1161; Skinner Mfg. Co. v. Kellogg Sales Co., 8 Cir., 143 F.2d 895, 899; Magazine Publishers, Inc., v. Ziff-Davis Pub. Co., 2 Cir., 147 F.2d 182, 185. Cf., however, LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, 117, certiorari denied 329 U.S. 771, 67 S.Ct. 189, in which it is said that this ultimate question is reviewable on appeal.

In the second place the defendant has the undoubted right to manufacture and market a drink indistinguishable from the plaintiff's by either taste or color. In 1920 the Supreme Court in The Coca-Cola Co. v. The Koke Co. of America, 254 U.S. 143, 147, 41 S.Ct. 113, 114, 65 L.Ed. 189, said the plaintiff's "product including the coloring matter is free to all who can make it", provided of course, "no extrinsic deceiving element is present."

■ In the third place the plaintiff has no monopoly on the use of the word "Cola" in the name of its beverage. It has been held that the word is generic and therefore may be used in the name of a cola drink by any one who chooses to make such a beverage. Dixi-Cola Laboratories, Inc., v. Coca-Cola Co., 4 Cir., 117 F.2d 352, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505, and cases cited. In fact counsel for the plaintiff in the case at bar does not contend otherwise. Therefore, the plaintiff's claim of trade-mark infringement rests upon the defendant's use of the word "Polar" in conjunction with the word "Cola" as the name for its drink.

■ In support of this contention of infringement the plaintiff points to the similarities of "Polar" and "Coca" in number and arrangement of vowels. But on the issue of trade-mark infringement words are not to be compared syllable by syllable, vowel by vowel and consonant by

consonant. Instead they are to be compared as ordinary purchasers of soft drinks would compare them, that is, on the basis of similarities in their general appearance both in construction and in over-all impression on the eye. Thus the type, as script or block for instance, in which alleged infringing words are printed, the color thereof, and the color and composition of the background upon which they appear, as well as the spelling of the words themselves, are important considerations on the issue of trade-mark infringement. Furthermore, words are to be considered "in connection with other similar words in use in the same general field"[4]. Thomas Kerfoot & Co., Ltd., v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214, 215, and cases cited. Without elaborating on the facts already stated it will suffice to say that our own visual inspection of the exhibits in this case leads us to the conclusion that the court below not only was not clearly in error but instead was amply justified in its conclusion that the defendant's labels differ so much from the plaintiff's advertising (it does not label its bottles) that so far as appearance is concerned the defendant's use of "Polar Cola" does not infringe the plaintiff's trade-mark "Coca-Cola".

But the plaintiff's contention is not so much that its and the defendant's names in their respective settings look alike as that when spoken they sound alike. It says that the words "Polar Cola" and "Coca-Cola", when spoken in bars or taverns, which are frequently noisy places and where it and the defendant principally if not exclusively meet in competition, sound so similar as to cause consumer confusion. And in addition it says, and stresses, that the similarity in sound between the names is so marked as not only to permit but also actively to encourage the passing off of the defendant's product on orders for the plaintiff's. Thus the similarity in sound between the names is urged in support of

both the ground of trade-mark infringement and the ground of unfair competition. Since the same facts are said to support both grounds (see Armstrong Co. v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195) and since the test of both grounds is the same, we can dispose of two phases of the case on one consideration of the question of the verbal similarity of the names.

It appears that cola drinks, so called, are not frequently sold as such in bars and taverns. It appears that the principal use of cola beverages in such establishments is either as a chaser or as a mixer with spirits, usually rum or whiskey, and that when so used, as well as when dispensed alone, the drink is usually poured by the bartender at the bar from the bottle in which it came from the manufacturer into the glass served to the customer. Thus customers in bars and taverns seldom know by visual inspection what kind of cola beverage is served to them. And the evidence is that in the vast majority of cases they do not care. There is testimony that most customers order spirits and a cola drink by asking for a "Cuba Libre" (rum and a cola beverage mixed) or rum and cola or "coke",[5] or whiskey and cola or "coke", or rum or whiskey with a cola or "coke" chaser, that few customers specify the brand of whatever spirit they may wish served with the cola drink, and that still fewer ever specify any particular brand of cola beverage. The record is devoid of statistics—probably such statistics do not exist—but on the record as it stands we feel on safe ground in assuming that only a very small percentage of the persons who order a cola drink and a spirit in bars and taverns ever place specific orders for Coca-Cola. Therefore, we conclude, since the plaintiff has no right to the names "Cuba Libre" or "cola", and in this case asserts no right to the name "coke", that relatively very few opportunities ever arise for passing off the defend-

---

[4] The District Court enumerated a dozen different cola type drinks marketed under names including the word "Cola".

[5] In accordance with a stipulation entered into by counsel for the parties in the court below, that court found that there was no evidence on which to make a finding, and no occasion for a finding, that the word "coke" ordinarily means "Coca-Cola".

ant's drink in bars and taverns on specific orders for the drink manufactured by the plaintiff.

The evidence upon which the plaintiff relies, and the only evidence in the case, to show specific instances of passing off by bartenders of the defendant's beverage on categorical orders for the plaintiff's Coca-Cola was given by investigators hired by the plaintiff. These men made repeated visits to bars and taverns in and around Boston in which the defendant's beverage was sold, and there asked specifically for "Coca-Cola", usually in conjunction with an order for rum or whiskey. They took note of what was served to them and found that sometimes they received what they ordered, sometimes were given the defendant's beverage, and on an appreciable number of occasions were given some other cola type drink. The court below found that of 82 separate establishments visited, 47 on one or more occasions served defendant's product on specific orders for "Coca-Cola", and in the remaining 35 establishments the bartenders responded to 201 specific orders for "Coca-Cola" by serving Royal Crown Cola 31 times, Castle Rock Beverages 28 times, Pepsi-Cola 25 times, Coca-Cola 24 times and miscellaneous brands 93 times.

██ There is no evidence that the defendant ever suggested in sales talks or advertising that bartenders substitute its drink on specific orders for the plaintiff's, and the court below found as a fact that it had never done so. Nevertheless, there is testimony that in some instances when the plaintiff's investigators called the bar-waiter's attention to the substitution and the waiter admitted that a substitution had been made, they said to the waiter, "They (meaning the names Polar Cola and Coca-Cola) both sound alike, don't they?" and the waiter replied, "Yes, they do." The plaintiff relies heavily upon this testimony to show that the defendant by its choice of the name "Polar Cola" induced bartenders to pass off its product on orders for Coca-Cola. But obviously the question asked of the waiters has all the familiar vices of the leading question, and in addition it leads directly, almost inescapably, to a

self-serving answer. We think it clear that this testimony falls short of proving clear error in the district court's finding that the only inducement the defendant held out to bartenders to substitute its drink for the plaintiff's was the inducement of a lower price (the defendant's drink is about one-half as expensive as the plaintiff's) and that inducement it was of course free to offer. All the defendant did, therefore, to make substitution by bartenders possible was to manufacture a drink almost if not quite identical with the plaintiff's, which it had an established legal right to do, and all it did to make such substitution likely was to sell its drink at about half the price of the plaintiff's, which it certainly was within its rights in doing. It seems to us to go without saying that such conduct on the defendant's part falls far short of constituting the legal wrong described in Warner & Co. v. Lilly & Co., 265 U.S. 526, 530, 531, 44 S. Ct. 615, 68 L.Ed. 1161, of designedly enabling and inducing its retail dealers to defraud their customers by palming its product off on them as the plaintiff's.

Only minor matters remain for our consideration.

The plaintiff contends that the evidence conclusively establishes that the defendant itself, at its bottling plant in Salem, passed off its product for Coca-Cola. This contention, like the preceding one, rests exclusively upon the testimony of the plaintiff's investigators. It appears that these young men, posing as employees of a local retail dealer who in past years had purchased the defendant's products, went to the defendant's plant on several occasions in the summer of 1944. First they telephoned to the defendant's plant that their ostensible employer would like some of the defendant's products, then they drove to its bottling plant by automobile. On their first visit, after some friendly banter with the defendant's female employees, they ordered five cases of soft drinks and then went into the back room to select what they wanted. They chose one case of Polar Cola and four cases of other unrelated soft drinks, paid for their purchase, put the cases in their car and drove away.

On their next visit they asked for a case of "coke" but were told that none was available. On their third visit they again asked for "coke", as well as other soft drinks, were given a case of Polar Cola with their order, and again paid for their purchase and drove away with it. On their fourth visit, mindful of their instructions to order "coke" on two occasions before they ordered Coca-Cola, they ordered the latter by name. They were given a case of Polar Cola which they paid for and took away without objection. They testified that they observed signs on the defendant's establishment indicating that it was the bottling plant of "Snow Crest Beverages" and saw no reference there by sign or otherwise to Coca-Cola.

On this evidence the court below found that any reasonable person in the position of the defendant's employees would have supposed that when the plaintiff's agents asked for Coca-Cola they were asking for the product which without assistance they had themselves selected from the back room on their first visit; which on two occasions they had asked for as "coke" and on one of those occasions had accepted without complaint on that order; and which was the sort of product any normal customer would expect to get from a plant which was obviously not a Coca-Cola bottling plant. Therefore, the court below found as an ultimate fact that the defendant's employees believed, and were justified in believing, that when the plaintiff's investigators asked for Coca-Cola, for reasons peculiar to themselves, they meant not Coca-Cola but Polar Cola. The sufficiency of the evidence recited above to support these findings of fact does not seem to us to call for demonstration.

The plaintiff contends, apparently seriously, that the district court committed error of law in that it measured the likelihood of the defendant's mark to deceive by the erroneous test of the reaction thereto of the "careful buyer" of cola drinks rather than by the correct test of the reaction of the "ordinarily careful buyer" of such beverages. We think that in making this contention the plaintiff gives wholly unwarranted significance to a typographical error. To be sure it would appear from the transcript of record that the district court quoted this court's opinion in Thomas Kerfoot & Co., Ltd., v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214, 215, as reading "the question * * * whether * * * two names are so similar * * * that one is likely to be mistaken for the other by a careful buyer, is to be determined", etc., when in fact the quotation should read "by an ordinarily careful buyer". But in other places in its opinion the court below clearly indicates that it recognized and applied the correct test, and furthermore in the district court's opinion as published in 64 F.Supp. 980, at page 990, the Kerfoot case is correctly quoted. It seems to us, therefore, that this contention rests upon an obvious typographical error in the district court's opinion as printed in the transcript. In consequence we think it entirely lacking in merit.

It does not seem to us that the plaintiff can make any valid objection to the use of the phrase "double size" on the defendant's 12 oz. bottles even if the phrase does connote that those bottles are twice the size of the plaintiff's. We see no reason why the defendant cannot legitimately call the attention of consumers to the fact that it offers twice as much beverage for the same price as the plaintiff.

Nor do we think the plaintiff can legitimately complain of the defendant's use of "Delicious Refreshing" on some of its labels. These are common adjectives, they are peculiarly appropriate words to use in advertising a beverage, and we cannot concede that the plaintiff can acquire an exclusive right to use them for that purpose. We cannot see how the plaintiff has any right to complain of the defendant's use of the words in the way it did, i.e., on labels otherwise having no resemblance to anything appearing in the plaintiff's advertising.

The plaintiff's contention that at a conference with defendant's president before suit was brought, it gave the defendant such definite notice that its dealers were making a practice of passing off Polar Cola to their consumers on orders for Coca-Cola that the defendant was thereby obligated to investigate the matter and

take steps to prevent its dealers from continuing the practice (see New England Awl Co. v. Marlborough Awl Co., 168 Mass. 154, 155, 46 N.E. 386, 60 Am.St.Rep. 377) is adequately answered by the finding and conclusion of the court below.

The plaintiff's remaining contentions have been considered but are found to be so wholly lacking in merit that even their enumeration would unduly expand this opinion.

The judgment of the District Court is affirmed.