**S. S. KRESGE COMPANY,**
**Plaintiff-Appellee,**

v.

**UNITED FACTORY OUTLET, INC., et al., Defendants-Appellants.**

**No. 78–1415.**

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1979.
Decided May 18, 1979.

Burton Chandler, Worcester, Mass., with whom Meredith Peterson Tufts, and Seder & Seder, Worcester, Mass., were on brief, for defendants-appellants.

Richard W. Renner, Chicago, Ill., with whom Richard E. Alexander, Chicago, Ill., was on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by defendants-appellants, United Factory Outlet, Inc., et al. (United), from an order of the district court denying a preliminary injunction sought to prevent S. S. Kresge Co. (Kresge), plaintiff-appellee, from using the word "Mart" in any form of advertisement in Worcester County, Massachusetts; making any form of public communication in Worcester County distinguishing appellee's stores from those of appellants; making any form of public comment that the actions of appellants in protecting their right to the use of the name "Mart" will be detrimental to the community; and making any form of public comment as to appellee's plans to expand into Worcester County.

United has operated two retail discount department stores in Worcester County under the name of "The Mart" since 1960.[1] Kresge, which has operated a national chain of similar stores under the name of "K mart" since 1962,[2] announced plans to open two K mart stores in the Worcester area. As a result of repeated assertions by United that it had exclusive use of the term "The Mart" in the area and its threat of legal action, Kresge filed an action in federal district court for a declaratory judgment that it could legally operate stores in Worcester County under the name "K mart."

After filing the lawsuit, Kresge initiated an advertising campaign in the local media announcing that it would like to open a K mart store in the City of Worcester. Several articles appeared in the local press which contained interviews of Kresge employees and dealt with Kresge's anticipated expansion into the area and the potential benefits resulting therefrom in terms of employment in retailing and construction, taxation, etc. The articles also adverted to the pending lawsuit.

In June, 1978, United filed a motion in the pending declaratory judgment action for a preliminary injunction.[3] The district court denied the motion on the basis that the term "mart" is generic and, thus, not subject to protection. Because of the fervor that the parties have evinced in this case, it is appropriate to point out that we are ruling on the question of whether the district court committed a clear error of law in denying the injunction. Appellants bear the heavy burden of convincing us that they had shown below that they probably would prevail on the merits. *Automatic Radio*

---

1. United has held a registration since 1966 under Massachusetts law of the following words superimposed upon a black oblong field with a shadow background: "The Mart, 664 Main Street, Your Self Service Dept. Store."

2. Kresge is the holder of a federal registration of its trade name, "K mart" under 15 U.S.C. § 1051 *et seq.*, but does not claim any superior right as a result of this registration. The mark consists of a drawing of the letters "K mart" in red and blue.

3. The motion asked that Kresge be enjoined from:
   1. Using or causing to be used the word "Mart" in any form of advertising whatsoever in Worcester County, Massachusetts.
   2. Making or causing to be made to newspapers, television or other public communications medium in or affecting Worcester County, Massachusetts any and all statements or advertising which, either directly or indirectly, tend to distinguish Plaintiff's stores from the stores of the Defendants.
   3. Making or causing to be made to newspapers, radio, television or other public communications medium in or affecting Worcester County, Massachusetts, any and all statements or advertising which, either directly or indirectly, state or imply that the actions of Defendants in protecting their asserted legal rights to the name, "Mart", are or will be detrimental to the interests of the community in which Defendants are located.
   4. Making or causing to be made to newspapers, radio, television or other public communications medium in or affecting Worcester County, Massachusetts, any and all statements or advertising concerning either Plaintiff's proposed plans for expansion into the community in which Defendants are located, or proposed employment of residents of the community, or both.

*Mfg. Co. v. Ford Motor Co.,* 390 F.2d 113, 115 (1st Cir.), *cert. denied,* 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968).

Trade name law involves rights in the use of symbols or words which serve to distinguish the source of a particular good or service. There are generally recognized four categories of words which, in their ascending order of eligibility for protection, are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary and fanciful. *Abercrombie & Fitch v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976). Generic terms are those which refer to a genus of which a particular product is a species, without distinguishing its source or origin.[4]

Generally speaking, generic terms are unprotectible through trademark or trade name registration. *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 79 (7th Cir. 1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *Abercrombie & Fitch, supra,* 537 F.2d at 9; *CES Publishing Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11, 13 (2d Cir. 1975). A survey of well-known dictionaries reveals that the term "mart" is generic since it is another word for store or market.[5] We recognize appellants' point regarding the shifts in meaning which occur with many terms in our language over a period of time and through usage, but such a shift has not yet occurred with respect to "mart." Appellants describe the term "mart" as quaint and not generally used in common parlance. The question, however, is not whether a term is more frequently chosen colloquially than any of its synonyms, but whether it still retains its generic meaning. Appellants have made no showing that the term in this case has any meaning in the minds of the consuming public other than store or market. *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 699 (2d Cir. 1961). The record, in fact, reveals that the term is commonly used as a substitute for store or market as evidenced by over thirty federally registered trade names and trademarks which include the word mart. (*E. g.,* G–Mart, Mammoth Mart, Mini-Mart, Q Mart, Medi Mart, Valu-Mart, etc.) Leaving aside any trademark or trade name registration considerations, it has long been settled that at common law generic terms could not become valid trademarks. *Delaware Hudson Canal Co. v. Clark,* 13 Wall. 311, 80 U.S. 311, 323, 20 L.Ed. 581 (1871); *Abercrombie & Fitch, supra,* 537 F.2d at 9.

Appellants contend that, even if the word "mart" is generic, they are still entitled to protection under the law of unfair competition. The cases cited for this proposition stand for the well established rule that courts will protect descriptive or geographic terms which have acquired a secondary meaning. *Southwestern Bell Co. v. Nationwide Independent Directory Service, Inc.,* 371 F.Supp. 900, 909 (W.Ark.1974) (on the use of the term "Yellow Pages"); *Atlantic Monthly Co. v. Frederick Unger Publishing Co.,* 197 F.Supp. 524 (S.D.N.Y.1961) (on the use of the term "Atlantic"); *Abercrombie & Fitch, supra* (on the use of the term "safari" to describe certain clothing styles). This doctrine of secondary meaning, however, has rarely been extended to a generic term used generically. In *Coca-Cola Co. v. Snow Crest Beverages,* 162 F.2d 280, 283 (1st Cir. 1947), in refusing to extend protection to the word "Cola" and upholding the right to use the name "Polar Cola," we said: "It has been held that the word is generic and therefore may be used

---

4. Two well-known examples are the term "the pill" for an oral contraceptive tablet, *Application of Searle & Co.,* 360 F.2d 650 (C.C.P.A. 1966), and "cola" for a soft drink made from cola nuts, *Coca-Cola v. Snow Crest Beverages, Inc.,* 162 F.2d 280 (1st Cir. 1947). In neither case was protection given to the generic name.

5. The term "mart" is defined as: "A public place for buying and selling; a marketplace, market hall etc . . . and as applied by tradesmen to designate their shops, as in boot and shoe mart," 6 THE OXFORD ENGLISH DICTIONARY 189 (1970); "a center of trade; market," 2 THE WORLD BOOK DICTIONARY 1265 (1973); "market; trading center," THE AMERICAN COLLEGE DICTIONARY 747 (1964), THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 801 (1973), WEBSTER'S NEW WORLD DICTIONARY 870 (1976); "market," WEBSTER'S NEW COLLEGIATE DICTIONARY 705 (1973).

in the name of a cola drink by any one who chooses to make such a beverage." The same reasoning would seem to apply here. Secondary meaning does not usually attach to the words "The Mart" any more than to the words "The Market" or "The Store," although when "mart" is used in conjunction with other words or symbols it may become descriptive and may acquire a secondary meaning. We are aware of the language in *Food Fair Stores, Inc. v. Food Fair, Inc.*, 177 F.2d 177, 185 (1st Cir. 1945), suggesting that generic terms used in combination can acquire a secondary trade name meaning, but, in that case, both parties were vying for the exclusive right to use the identical words. Moreover, we are here ruling only on the question of probability of success on the merits; we are not definitively deciding the ultimate issue.

Nor is it clear how Kresge's attempt to open a store in Worcester would constitute unfair competition. The record does not compel a conclusion that Kresge's advertisement or the news article were an attempt to confuse the public into thinking that its stores or products are in any way related to United's stores. In fact, it seems that Kresge's advertisement has the opposite goal, distinguishing itself from any other stores operating in the area.[6]

Appellants also argue[7] that they are entitled to protection under the Massachusetts anti-dilution statute, Mass.Gen. Laws Ann., ch. 110B, § 12, which provides:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of con-

fusion as to the source of goods or services.

In applying this broadly worded statute, the courts have been reluctant to grant exclusive rights, as sought here by appellants, to all but the "strongest" trade names. *See Mr. Boston Seafoods Corp. v. Mr. Boston Distiller, Inc.*, 315 F.Supp. 574, 577 (D.Mass.1970); *Tiffany & Co. v. Boston Club, Inc.*, 231 F.Supp. 836, 846 (D.Mass. 1964). Appellants have failed to make a showing of likelihood of injury to their business reputation, and the term "mart" is clearly weak as evidenced by the number of federal and state registrations incorporating the term. In addition to the federally registered trade names already referred to, the record shows there are approximately twenty-four Massachusetts registered corporations whose names use the term "mart" in some fashion.

Finally, we consider whether the district court should have exercised its general equitable powers in light of appellants' argument that the similarity of the two trade names calls for relief similar to that fashioned in *Food Fair Stores v. Food Fair*, 83 F.Supp. 445, 452–53 (D.Mass.1948), where the court required the defendant to preface its identical mark with some distinguishing element. In the instant case, the two marks are neither identical nor visually similar. United contends, however, that Kresge's own survey data showed that 7.2% of consumers surveyed in the area believed "The Mart" and "K mart" to be "really owned by the same people." This, however, ignores the fact that 5.7% of the same people reached the same conclusion as to "The Mart" and King's Department Store, which are clearly unrelated. This led the expert who conducted the poll to conclude that "similar sounding names do not add to the confusion that is generally present for all

---

6. Part of the advertisement stated: "K mart would like to be come part of the Worcester community, to renew a relationship with former Kresge's customers and to prove to new customers that, although there may be other discount stores, there is none quite like K mart."

One of the newspaper articles contained the following: "The Goffs contend K mart's entry into the Worcester market would hurt their business and confuse shoppers. K mart's position is that shoppers will be able to tell the difference between the two operations."

7. This was not treated directly or indirectly by the court below, and we do not know whether this point was pressed in the district court.

stores." We see no reason, therefore, to require the lower court to order appellee to further distinguish its trade name from that of appellants. Moreover, such a ruling would be premature because the declaratory judgment action has not yet been decided.

We also share the district court's concern that granting the broad sweeping injunction appellants seek might well implicate the first amendment. While it is unnecessary to address this question since appellants have not shown that the district court committed a clear error of law, its background presence must be noted.

*The order of the district court denying the motion for preliminary injunction is affirmed.*