**CONVENIENT FOOD MART, INC.**

v.

**6–TWELVE CONVENIENT MART, INC., et al.**

**Civ. No. Y–87–1020.**

United States District Court, D. Maryland.

July 21, 1988.

Diane Fields Geocaris, Mark I. Feldman, Chicago, Ill., Gary M. Sircus, and Deborah Farmer Minot, Baltimore, Md., for plaintiff.

Anthony C. Epstein, Diane H. Lautrup, Washington, D.C., and Richard J. Magid, Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

This suit raises an easily stated issue: is the term "convenient," as used in the trade names of plaintiff and defendant food store chains, protected by the trademark laws for exclusive use by plaintiff, or is the term simply a common description of the particular type of retail service provided by plaintiff, defendants, and others? The Court finds that the term "convenient" as used in plaintiff's trade name is generic and that plaintiff's registered marks should be cancelled or modified.

BACKGROUND

Plaintiff Convenient Food Mart ("CFM") filed this action on May 26, 1987, against 6–Twelve Convenient Mart and co-defendant brothers Aris and Armen Mardirossian, respectively president and vice-president of 6–Twelve (collectively "6–Twelve"), for

trademark infringement and unfair competition. CFM asserted registration of its trade name and logotype since 1967 and 1982, respectively, as service marks on the Principal Register of the U.S. Patent and Trademark Office. Plaintiff also asserted similar registration of five trade marks for foodstuffs distributed through its stores, one of which first appeared on the Principal Register in 1975.[1] Plaintiff claimed that it has the incontestible and exclusive right to use "convenient" in its trade name and seeks injunctive relief and treble damages.[2] 6–Twelve answered, raising the defense of fair use[3] and counterclaiming under federal and state law for cancellation of CFM's registered marks.

"Incontestibility" of trade and service marks under the Lanham Act, 15 U.S.C. § 1051 et seq., is a status of conclusively presumptive validity which registered marks achieve under certain conditions, primarily the continuous use of the mark in commerce for five years. Section 1065 defines the prerequisites for "incontestibility" status. The conclusive presumption of validity, and exceptions thereto, are defined in § 1115(b). Defendants' counterclaim for cancellation of plaintiff's marks rests not on the defenses enumerated in § 1115(b) but rather contests the marks' "incontestible" status at their incipiency: § 1065(4)

provides that "no incontestible right shall be acquired in a mark which is the common descriptive name of any article or substance, patented or otherwise." Similarly, a petition to cancel a registration may be filed under § 1064(c) if the term becomes commonly descriptive after registration or even after the recognition of "incontestibility" status. Thus, plaintiff's claim that its marks are "incontestible" under § 1065 depends on whether they have become "commonly descriptive," i.e., "generic." See generally Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); Dan Robbins & Associates, Inc. v. Questor Corp., 599 F.2d 1009, 1014 (C.C.P.A.1979); 1 Gilson, Trademark Protection and Practice §§ 2.02, 4.03[3] (1985); 1 McCarthy, Trademarks and Unfair Competition § 12.18(D) (2nd ed. 1984); 3 Callman, Unfair Competition, Trademarks and Monopolies § 18.25 (July, 1987).

Trademarks are classified "into four groups in an ascending order of strength or distinctiveness: 1. generic; 2. descriptive; 3. suggestive; and 4. arbitrary or fanciful." Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir.1984) (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2nd Cir.1976)).

---

1. Plaintiff's seven federal registrations of "Convenient Food Mart" are as follows:

| Registration # | Registration Date | Mark Type | Name/ Logo |
|---|---|---|---|
| 822,571 | 1/17/67 | Service | Name |
| 1,023,865 | 10/28/75 | Trade | Name |
| 1,192,576 | 3/23/82 | Trade | Logo |
| 1,194,877 | 5/04/82 | Service | Logo |
| 1,296,635 | 9/18/84 | Trade | Logo |
| 1,319,654 | 2/12/85 | Trade | Logo |
| 1,326,209 | 3/19/85 | Trade | Logo |

The first registration was qualified: "The words 'Food Mart' are disclaimed apart from the mark as a whole." Each subsequent registration was similarly qualified. See Complaint Exhibits 1 and 3. Plaintiff claims that registrations 822,-571 and 1,023,865 have become "incontestible." Plaintiff's name also is registered in Maryland under registration number 79 S 512. Complaint ¶¶ 10–14. The Court's analysis regarding the genericness of CFM's federally registered marks applies equally to the Maryland marks.

2. The Court granted defendants' motion to strike plaintiff's claim for punitive damages by letter dated September 30, 1987, because puni-

tive remedies are not available where treble damages are awarded under the Lanham Act, 15 U.S.C. § 1117. See Caesars World, Inc. v. Venus Lounge, Inc., 520 F.2d 269, 274 (3rd Cir.1975); Metric and Multistandard Components Corp. v. Metric's Inc., 635 F.2d 710, 715 (8th Cir.1980) (§ 1117 governs relief awarded under § 1125(a)); 1 Gilson, Trademark Protection and Practice § 8.08 (1987). Also, plaintiff failed to allege malice with respect to the state law claims.

3. The affirmative defense of "fair use" is one of the seven statutory defenses to a mark deemed incontestible. 15 U.S.C. § 1115(b)(4). This defense is relevant to plaintiff's claim of unfair competition, however, the Court need not express an opinion on such a defense to plaintiff's trademarks claims because the genericness issue is dispositive of the question of the validity of plaintiff's marks.

Defendants have dropped the affirmative defenses of laches, abandonment, and acquiescence which were raised in their answer. See Defendants' Reply re. Genericness at 30.

*See also Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). The Supreme Court's opinion in *Park 'N Fly, supra,* provides an overview of trademark protection analysis:

> The provisions of the Lanham Act concerning registration and incontestibility distinguish a mark that is "the common descriptive name of an article or substance" from a mark that is "merely descriptive." §§ 2(e), 14(c), 15 U.S.C. §§ 1052(e), 1064(c). Marks that constitute a common descriptive name are referred to as generic. A generic term is one that refers to the genus of which the particular product is a species. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (CA2 1976). Generic terms are not registrable, and a registered mark may be cancelled at any time on the grounds that it has become generic. See §§ 2, 14(c), 15 U.S.C. §§ 1052, 1064(c). A "merely descriptive" mark, in contrast, describes the qualities or characteristics of a good or service, and this type of mark may be registered only if the registrant shows that it has acquired secondary meaning, *i.e.,* it "has become distinctive of the applicant's goods in commerce." §§ 2(e), (f), 15 U.S.C. §§ 1052(e), (f).

469 U.S. at 193–94, 105 S.Ct. at 661. Plaintiff asserts that its marks are not generic but rather are descriptive and have acquired secondary meaning with the public, and that its two oldest marks have become incontestible by operation of law. Defendants argue that CFM's registered marks are generic and therefore must be cancelled. Alternatively, defendants argue that 6–Twelve's trade name use of "convenient mart" is a fair use of plaintiff's merely descriptive mark.

■ Registration of a mark is *"prima facie* evidence of the registrant's exclusive right to use the mark in its business." 15 U.S.C. § 1115(a). *See* McCarthy § 19:5. Because defendants' counterclaim attacks the incontestibility status of plaintiff's two oldest marks, plaintiff is accorded this *prima facie* presumption and not the conclusive presumption. *See Park 'N Fly, supra,* 469 U.S. at 199 n. 6, 105 S.Ct. at 664 n. 6. Defendants bear the burden of overcoming the presumption with a showing by a preponderance of the evidence that plaintiff's marks are generic. *Pizzeria Uno, supra,* 747 F.2d at 1529 n. 4. Although cancellation is not granted lightly, Callman § 18.25 at 231, "[t]he presumption really serves only to shift the burden of production to the defendant." *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 938 (7th Cir.1986).

Judge Learned Hand noted in his oft-quoted opinion in *Bayer Co. v. United Drug Co.,* 272 F. 505, 509 (S.D.N.Y.1921), that "[t]he single question, as I view it, in all these cases, is merely one of fact: What do the buyers understand by the word for whose use the parties are contending?" Thus, courts have deemed the question of whether or not a term is generic and thus completely unprotected under the trademark laws, or merely descriptive and thus susceptible to limited attack pursuant to § 1115, to be an issue of fact. *Dan Robbins, supra,* 599 F.2d at 1014; *In Re Northland Aluminum Products,* 777 F.2d 1556, 1559 (Fed.Cir.1985); Callman § 18:25 at 228. This Court denied plaintiff's motion to dismiss defendants' counterclaim by letter dated October 21, 1987, with the expectation that the parties would then proceed to develop evidence of what the primary significance of the term "convenient" is to the potential customers of such retail food establishments.

Defendants moved for summary judgment on the claim and counterclaim regarding their fair use of plaintiff's marks and the genericness of plaintiff's marks. Plaintiff then filed a cross-motion for summary judgment, responding to defendants' fair use and genericness assertions. Briefing continued with defendants' replies regarding fair use and genericness, plaintiff's reply, and finally defendants' supplemental response. Although the parties offered affidavits, deposition testimony, and argument regarding the meaning and usage of the term "convenient" within the retail food store industry and in the corporate

minds of the parties,[4] neither party submitted the results of a consumer survey or other evidence of whether the public understands CFM's marks to refer to a type of retail outlet or to CFM's own stores in particular.[5] Most trademark cases involving language usage are resolved by use of such surveys which are "almost de rigeur [sic] in litigation over genericness." McCarthy § 12.2 at 529. Without survey evidence, the Court is left to rely upon grammatical logic and other commonly available factual evidence such as dictionary definitions and media usage. *Id. Cf. Liquid Controls, supra,* 802 F.2d at 936; *Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901, 905 (7th Cir.1983) ("dictionary ... especially appropriate"); *S.S. Kresge Co. v. United Factory Outlet, Inc.,* 598 F.2d 694, 696 (1st Cir.1979) (relying upon a "survey of well-known dictionaries"); *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978).

■ Although characterized by courts as an issue of fact, the genericness issue is ripe for resolution on summary judgment despite the lack of survey evidence. *See Liquid Controls, supra; Gimix, supra,* 699 F.2d at 905–06; Gilson § 8.10[3] at 8–205 to 207. Plaintiff's cross-motion for summary judgment faults defendants for "not [having] produced any independent evidence of such use or understanding by the public." Cross-motion at 12. After plaintiff states that "there are genuine issues of material fact on defendants' claim of genericness," it argues that summary judgment should be granted in plaintiff's favor on the cancellation counterclaim. *Id.* at 14. Plaintiff's assertion that "Convenient's undisputed evidence also demonstrates its marks are not generic" is followed by a discussion of grammatical analysis where it states "[t]he noun/adjective test is particularly appropriate to this type of case...." *Id.* at 21–22. Thus, by filing a cross-motion instead of a simple opposition to summary judgment, plaintiff has indicated its preparedness for the Court to resolve the genericness issue without reliance upon survey evidence.

Defendants' counterclaim is considered a collateral attack upon the infringement claim, but is equivalent to an affirmative defense. *Pizzeria Uno, supra,* 747 F.2d at 1529; Gilson § 2.02 at 2–10 to 11; 2 McCarthy § 32.43. Therefore, a ruling on the genericness issue with regard to defendants' counterclaim must necessarily be a ruling upon the genericness issue with regard to the validity of the registrations of plaintiff's marks upon which it brought this trademark infringement action.[6] Thus, the genericness issue may be dispositive of both the counterclaim and plaintiff's case-in-chief. Indeed, the Court finds that it is.

## GENERICNESS

■ "A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular prod-

4. In addition to the summary judgment motions, there is pending plaintiff's motion to compel production of any trademark search conducted on behalf of 6–Twelve just prior to the switching of its identifier from "Quik Mart" to "Convenient Mart." Evidence of any such search would not be relevant to the genericness issue which rests upon the "primary significance of the term in the minds of the consuming public...." *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). Moreover, the occurrance of any such search would only be relevant to the good faith element of 6–Twelve's fair use defense. Thus, the motion to compel will be denied as moot because of the Court's ruling in favor of defendants' claim that CFM's name is generic.

5. Plaintiff initially submitted as Appendix N to its cross-motion deposition testimony of John Bunge who, apparently, was commissioned to perform such a survey. However, by letter dated February 15, 1988, plaintiff withdrew this exhibit. Plaintiff never reported to the Court the status of any consumer survey in progress, nor did it request additional time prior to the filing of its cross-motion specifically for the purpose of designing or completing a survey. *Cf. Gimix, Inc. v. JS & A Group, Inc.,* 213 U.S. P.Q. 1005, 1006 (N.D.Ill.1982), *aff'd,* 699 F.2d 901 (7th Cir.1983) ("Both sides are at fault for such laxness.")

6. CFM raised the issue of the likelihood of confusion in its answer to Defendant's Interrogatory 11 (Defendants' Motion (Exhibit 3)). However, plaintiff admitted in briefing that this issue has no bearing on the trademark validity issue. Plaintiff's Reply at 2 n. 1.

uct is a species.... [E]ven proof of secondary meaning, by virtue of which some 'merely descriptive' marks may be registered, cannot transform a generic term into a subject for trademark." *Abercrombie & Fitch, supra,* 537 F.2d at 9. On the other hand, if a term "describes the qualities or characteristics of a good or service" it is deemed merely descriptive. *Park 'N Fly, supra,* 469 U.S. at 194, 105 S.Ct. at 661. Although the "lines of demarcation ... are not always bright," *Abercrombie & Fitch, supra,* it is clear that a mere misspelling cannot transform a generic term into a protected term, *American Aloe Corp. v. Aloe Creme Laboratories, Inc.,* 420 F.2d 1248 (7th Cir.), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1820, 26 L.Ed.2d 91 (1970), nor can use of a phonetic equivalent, *Miller Brewing, supra,* or simple addition of a suffix change the generic nature of a term. McCarthy § 12.12 at 556.

Convenient Food Mart asserts that "convenient" is not generic because "convenience store" is widely cited as *the* generic term for the type of retailing industry in which CFM and 6–Twelve compete. Cross-motion at 21. CFM argues that a "parts of speech" or "noun/adjective" test is therefore particularly appropriate: "nouns and generic words function as means of classifying their subject, while adjectives and descriptive trademarks suggest a quality or characteristic of the subject which is applicable to a wide range of classifications.... Unlike the noun 'convenience store', which specifies a kind of store without further describing it, the adjective 'convenient' is applicable to a wide range of products and is used to describe its subject." *Id.* at 22. The Court finds this analysis strained. The fact that one generic term is prevalent in public usage does not preclude the Court from finding that the adjective equivalent of the term is also generic. "The question ... is not whether a term is more frequently chosen colloquially than any of its synonyms, but whether it still retains its generic meaning." *S.S. Kresge, supra,* 598 F.2d at 696. More broadly, the inquiry is whether the term is recognizable as "[r]elating to or characteristic of a whole group or class; general, as opposed to specific or special." *Black's Law Dictionary* 617 (5th ed. 1979).

Plaintiff complains that defendants repeatedly use the improper term "convenient store" in their briefs and that "it is immaterial that third-parties may sporadically misuse (or mistype) 'convenient' in a descriptive sense, because these limited examples of usage do not prove that there has been a change in consumer perception." Plaintiff's Reply at 7, 9. The Court finds CFM's insistence that the terminology "convenience store" is *the* proper English and hence must be preserved by the judiciary presumptuous and ironic. The irony is that the terms "convenience store" and "convenience food" are of recent origin themselves, *Random House Dictionary of the English Language* 443 (2nd ed. 1987) (nascent 1960–1965); I *A Supplement to the Oxford English Dictionary* 626 (1972) (citations of usage in 1965 and 1961 respectively), and, like the numerous other noun-adjectives, are themselves recent linguistic corruptions.

The twentieth century's contagion of foreshortening whole phrases into noun-adjectives has been lamented as a curse upon grammatical precision. A leading British grammarian described the problem as follows:

> There is of course nothing new in putting a noun to this use when no convenient adjective is available; examples abound in everyday speech—*government department, nursery school, television set, test match,* and innumerable others. But the noun-adjective, useful in its proper place, is now running riot and corrupting the language in two ways. It is throwing serviceable adjectives onto the scrap heap.... And, what is worse, it is making us forget that to link two words together with *of* may be both clearer and more graceful than to put the second before the first as an attribute....

*Fowlers's Modern English Usage* 399 (E. Gowers 2nd ed. 1965). Similar disapproval of the noun-adjective "mania" was expressed as early as 1939. E. Partridge, *Usage and Abusage* 207 (1973). However, American grammarians now accept such

usage as "firmly established in English as seemingly to need no comment." [7] W. Morris and M. Morris, *Harper Dictionary of Contemporary Usage* 419 (2nd ed. 1985) (termed "noun modifiers"). Use of noun-adjectives is prevalent not only as generic terminology for the retailing industry in which CFM and 6–Twelve compete, but also as the common identifying word used by similar establishments in their business names. *See e.g.* C & P Telephone Co., *Consumer Yellow Pages—Greater Baltimore Metropolitan Area* 339 (1987–88) ("grocers-retail" listings include "Little George's Convenience Store" (seven locations) and "Lucky Convenience Markets, Inc." (nine locations)).

Such grammatical coinage does not constrain trademark analysis of the public's understanding of a term's meaning. Consider, for example, the trademark value of the converse of the noun-adjective, the adjectival: another part of speech "functioning as an adjective." *Webster's Third New International Dictionary* 26 (1971). In *American Thermos Products Co. v. Aladdin Industries, Inc.*, 207 F.Supp. 9, 15 (D.Conn.1962), *aff'd*, 321 F.2d 577 (2nd Cir. 1963), the court found that the "adjectival-noun, 'a thermos' " was "a coined word with a penumbra of suggestion" sufficient to uphold its validity as a trademark, but was not infringed by defendants' use of the same term in its generic meaning. CFM's name, on the other hand, simply uses traditionally proper grammar—an adjective and two nouns—and has no such "penumbra of suggestion" or particularly inventive or special meaning. Plaintiff has not created a protectible mark simply by using an adjective rather than the equivalent noun.

In the case of CFM and 6–Twelve, neither store is attempting to use the word "convenient" to distinguish itself as being particularly more convenient than any other convenient retail outlet, nor is the quality of being convenient distinctive or special for convenience stores. The adjective "convenient" merely identifies each chain of stores as sharing a characteristic common to the class of retail establishments designed to be convenient for brief visits by customers, to be located conveniently, or to sell "convenience foods." Dictionary definitions reveal no substantive difference between "convenience" and "convenient" other than their ordinary use as a noun and an adjective: *"convenience* ... 1. the quality of being convenient; suitability." *Random House Dictionary, supra. See also Supplement to Oxford English Dictionary, supra ("convenience* ... 9. *attrib.,* in sense 'designed for convenience; used when convenient'. orig. *U.S."*). Use of the word "convenient" with regard to food is ancient, *Proverbs* 30:8 (King James ver. 1611) ("feed me with food convenient for me"), and "convenience food," C. Barnhart, et al., *The Barnhart Dictionary of New English Since 1963* 105 (1973); *Chambers Twentieth Century Dictionary* 283 (1972), and "convenience goods," *Webster's, supra,* are a part of regular English usage.

CFM's insistence upon grammatical purity is presumptuous because public perceptions follow public usage: hence the frequent citation by authoritative dictionaries of the initial usages of words. Moreover, the role of the judiciary in managing public usage of words is limited and logically circular: trademarks are protected if they continue to hold distinctive meaning. The Court disagrees with plaintiff's dismissal of recent use of the term "convenient store" by media such as The Washington Post, United Press International, and The Bureau of National Affairs as being *de minimis* misuse. Plaintiff's Reply at 8. This usage is no doubt a transcription of the verbal corruption caused by the double "s" sounds in "convenience store" which is pronounced identically to "convenient store" in ordinary speech. Such a corruption is natural and hardly proscribable.[8] Moreover, the media has the incentive to reflect public usage so as to minimize confusing grammatical usage, and it is clear

---

**7.** The juxtaposition of two nouns, assuming the roles of noun and adjective, is known in literary prose as a "hendiadys." *Webster's Third New International Dictionary* 1056 (1971).

**8.** Such alliterative elision also occurred in classical Latin. For example *existo* derives from *ex* (forth) *sisto* (stand). *Harpers' Latin Dictionary* 702 (1879).

that the public would understand the media's use of "convenient store" when used generically.

The noun/adjective test, which CFM advocates, is an oversimplified approximation to the genus/species distinction. In deciding that the name of Miller Brewing Company's "Lite Beer" was equivalent to the generic classification itself, the Seventh Circuit in *Miller Brewing, supra,* noted that "[t]he fact that 'light' is an adjective does not prevent it from being a generic or common descriptive word." 561 F.2d at 80. It is clear that the term "convenient" in the names of both CFM and 6–Twelve, refer or relate to the genus of "convenience stores." The distinction is similar to that made in *Henri's Food Products Co., Inc. v. Tasty Snacks, Inc.,* 817 F.2d 1303, 1306 (7th Cir.1987), where the court reasoned as follows: "unlike 'lite beer,' 'tasty salad dressing' is not a kind, sort, genus or subcategory of salad dressing. Rather, 'tasty' is 'merely descriptive' and describes a quality found in many genuses of salad dressing."

CFM also argues that the genericness must be considered as to its whole name. Plaintiff's Reply at 13. The Court recognizes the difficulties in analyzing the genericness of the word "convenient" where CFM has disclaimed use of the term "food mart" except in its entire name. "Certain terms may connote more than the sum of their parts and we must take care to decide the genericness of these terms by looking to the whole." *Liquid Controls, supra,* 802 F.2d at 938. However, the Court finds CFM's arrangement of the words "Convenient Food Mart" obvious and meaning nothing more than a convenient food mart. The term "mart" itself was held generic, meaning store or market, in *S.S. Kresge, supra.* By extension, "Food Mart" means a food mart. Similarly, courts have found that the terms "liquid controls," "multistate bar examination," "surgicenter," "drug center," and "car care center" can have no more significance than their obvious meanings and therefore are generic. *Liquid Controls, supra; Vision Center v. Opticks, Inc.,* 596 F.2d 111, 117 (5th Cir. 1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). *Cf.* McCarthy

§ 12.3. CFM's argument that "convenient" gathers more significance when accompanied by "food mart" is unavailing, because its chief complaint is 6–Twelve's use of "convenient" rather than "convenience." In deposition testimony, CFM's president and chief executive officer agreed that it would be acceptable for defendants to change their business name to "6–Twelve Convenience Mart" because "Convenience is the generic term for convenience store." Risberg Deposition at 94 (Defendants' Reply re. Genericness, Exhibit B). Plaintiff has no action to force 6–Twelve to change an adjective in its business name to a noun by substituting the letters "ce" for "t" where the change would bring about no change in meaning. Thus, the Court will grant summary judgment for defendants on plaintiff's trademark infringement claims.

## UNFAIR COMPETITION

■ Plaintiff's federal and common law unfair competition claims have no merit. 15 U.S.C. § 1125(a) provides for a civil action against "[a]ny person who shall ... use in connection with any goods or services ... a false designation of origin ... including words or other symbols tending falsely to describe or represent the same...." As the foregoing discussion has made apparent, 6–Twelve's use of the words "Convenient Mart" is entirely appropriate as referring to the type of retail business in which CFM also competes. Therefore, it cannot be considered as "tending falsely to describe" such services. Nor can 6–Twelve's "designation" be considered as "tending falsely to ... represent" its services by choice of its logotype. 6–Twelve's logo consists of a square background of bright blue in which appears the word "TWELVE" below a large, bright red numeral six; below the blue square the words "CONVENIENT MART" appear in bright red. *See* Attachment to Defendants' Motion to Strike Punitive Damages Claim. CFM's logo consists simply of the word "Convenient" above the words "Food Mart" which appear in half-size type; these words appear in red and yellow, and the "C" in "Convenient" is preceded by a sec-

tion of a larger and concentric "C". *See* Complaint, Exhibit 3. Because it is apparent that 6–Twelve's logo does not tend to falsely represent its marks as those of plaintiff, the Court will also grant judgment for defendants on plaintiff's unfair competition claims.

## CONCLUSION

With the agreement of counsel, the Court, by the attached order, strikes a previous memorandum and order filed in this case in order to clarify the Court's rulings. To that extent, plaintiff's motion to alter or amend and to stay judgment is granted and final judgment is entered as of this date.

## ORDER

In accordance with the attached Memorandum, it is this 21st day of July, 1988, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's motion to alter or amend and to stay judgment BE, and the same hereby IS, GRANTED;

2. That the Memorandum and Order dated June 27, 1988 BE, and the same hereby IS, STRICKEN;

3. That the cross-motion of plaintiff for summary judgment BE, and same hereby IS, DENIED;

4. That the motion of defendants for summary judgment BE, and the same hereby IS, GRANTED on the issue of the genericness of plaintiff's trademarks;

5. That plaintiff's federal trademark registrations 822,571 and 1,023,865, and Maryland trademark registration 79 S 512 BE, and the same hereby ARE, CANCELLED;

6. That plaintiff's federal trademark registrations 1,194,877, 1,192,576, 1,296,635, 1,319,654, and 1,326,209 BE, and the same hereby ARE, MODIFIED by adding a disclaimer of the word "Convenient";

7. That plaintiff's motion to compel discovery BE, and the same hereby IS, DENIED as moot;

8. That JUDGMENT BE, and the same hereby IS, ENTERED for defendants on plaintiff's unfair competition claims;

9. That JUDGMENT BE, and the same hereby IS, ENTERED for defendants; and

10. That a copy of this Memorandum and Order be mailed to counsel for the parties.