**William KAZMAIER,
Plaintiff, Appellant,**

v.

**John WOOTEN, et al.,
Defendants, Appellees.**

**No. 84–1862.**

United States Court of Appeals,
First Circuit.

Heard March 4, 1985.
Decided April 30, 1985.

---

**48**

Susan M. Marshall, Boston, Mass., with whom Marshall, Rosen & Marshall, Boston, Mass., and R. Arlen Johnson, were on brief for plaintiff, appellant.

Paul R. Cacchiotti, Everett, Mass., for John Wooten.

Marie Lefton, Boston, Mass., with whom Anthony M. Feeherry and Goodwin, Procter & Hoar, Boston, Mass., were on brief for Hill, Holliday, Connors, Cosmopulos, Inc., and New England Ford Dealers Association.

David H. Erichsen, Boston, Mass., with whom James D. St. Clair, P.C., Linda A. Ouellette and Hale & Dorr, Boston, Mass., were on brief for Ford Motor Company.

Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and RE,* Judge.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff William Kazmaier appeals from a decision of the United States District Court for the District of Massachusetts granting defendants' motions for summary judgment. 593 F.Supp. 390. We affirm.

Kazmaier claims the exclusive right to call himself "the World's Strongest Man." He therefore objects to a commercial produced for defendant New England Ford Dealers' Association ("NEFDA") by NEFDA's advertising firm, Hill, Holliday, Connors and Cosmopulos, Inc. ("Hill, Holliday"), that refers to defendant John Wooten as "the World's Strongest Man." Kazmaier filed suit on May 18, 1984 alleging

that by telecasting the commercial, defendants misappropriated or unfairly used his trade name, committed unfair or deceptive trade practices in contravention of Mass. Gen.Laws ch. 93A, §§ 2, 11, maliciously interfered with his business expectations, and acted negligently. Kazmaier also claimed that defendant Ford Motor Company acted negligently in not preventing NEFDA from airing the commercial, was vicariously liable for NEFDA's acts, and violated Mass.Gen.Laws ch. 93A. Kazmaier sought injunctive relief [1] and damages of $8 million, and requested a jury trial.

On May 23, 1984, Kazmaier moved for a temporary restraining order enjoining the continued use of the advertisement in question. After oral argument, the district court denied the motion. At the court's suggestion, defendants moved for summary judgment, which the district court then granted, dismissing all of Kazmaier's claims.

At the heart of the court's rejection of the claims was its conclusion that Kazmaier was not entitled to exclusive use of the phrase "the World's Strongest Man." It ruled that because Kazmaier had never registered "the World's Strongest Man" as a trade name, the question of its protectability was governed by Massachusetts common law. The court went on to hold that, even assuming Kazmaier had established secondary meaning in the descriptive title, his rights in the name did not prevent Wooten's also using it, since Wooten sufficiently distinguished himself from Kazmaier in the commercial and so avoided any likelihood of confusion.

**I.**

■ We affirm the granting of summary judgment. While infringement and unfair competition cases often present factual issues that render summary judgment inap-

---

* Chief Judge of the United States Court of International Trade, sitting by designation.

**1.** According to the uncontested affidavit of Dennis Farrington, Vice President/Management Supervisor at Hill, Holliday, the commercial be-

came obsolete as of September 30, 1984, when the new model Fords were introduced, and would not be "aired in any form after that date." Kazmaier's prayer for injunctive relief is therefore moot.

propriate, this is not invariably so. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981). *See also B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir.), *cert. denied*, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970); *Beef/Eater Restaurants, Inc. v. James Burrough Ltd.*, 398 F.2d 637 (5th Cir.1968); *Westward Coach Manufacturing Co. v. Ford Motor Co.*, 388 F.2d 627 (7th Cir.), *cert. denied*, 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968).

"[I]t is the function of summary judgment, in the time hallowed phrase, 'to pierce formal allegations of facts in the pleadings ...,' and to determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (citation omitted). We conclude that summary judgment was warranted here because "the facts upon which appellant relied to support his allegation[s] were not susceptible of the interpretation which he sought to give them[. Thus,] appellees met their burden of showing the absence of any genuine issue of material fact." *Manego v. Cape Cod Five Cents Savings Bank*, 692 F.2d 174, 177 (1st Cir.1982) (footnote omitted).

We deal separately with each of Kazmaier's alleged causes of action beginning with the critical trade name infringement claim.

### A. Trade Name Infringement

 Under Massachusetts law, a purely descriptive phrase will be protected as a common law trade name if it has attained a secondary meaning. *Professional Economics, Inc. v. Professional Economic Services, Inc.*, 12 Mass.App. 70, 421 N.E.2d 1221 (1981). *See S.S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694 (1st Cir.1979), *aff'd on rehearing*, 634 F.2d 1 (1980). *See also Union Oyster House v. Hi Ho Oyster House*, 316 Mass. 543, 55 N.E.2d 942 (1944); J. McCarthy, *Trademarks and Unfair Competition* § 11.5 (1973) (descriptive marks). But the protection afforded to such a descriptive mark falls short of giving the original user the *exclusive* right to use it. That user may not prevent others from using the same descriptive phrase so long as the others sufficiently distinguish their product or service so "that a reasonably intelligent and careful person would not be misled." *Union Oyster House*, 316 Mass. at 546, 55 N.E.2d at 944. *See C.A. Briggs Co. v. National Wafer Co.*, 215 Mass. 100, 103, 102 N.E. 87, 88 (1913) ("[W]hile the use of ["Boston Wafers"] cannot be absolutely prohibited, it may be restrained unless accompanied with sufficient explanations or precautions to prevent confusion with the goods of the original manufacturer or vendor."); *American Waltham Watch Co. v. United States Watch Co.*, 173 Mass. 85, 86, 53 N.E. 141, 142 (1899) (although "Waltham" on plaintiff's watches had secondary meaning, defendant was entitled to use the word "Waltham" in connection with its watches if there was "some accompanying statement which shall distinguish clearly its watches from those made by the plaintiff."). *Cf.* McCarthy, *Trademarks and Unfair Competition* § 11.17.

 Applying the above principles, we examine Kazmaier's contention that the following triable issues exist with respect to his common law [2] trade name claims: whether "the World's Strongest Man" is a descriptive or a generic [3] name; whether it carries a secondary meaning; who enjoys

---

**2.** In addition to the common law trade name claims, Kazmaier argues on appeal a purported statutory claim under Mass.Gen.Laws, ch. 110B. This argument is unavailing. First, Kazmaier did not plead such a claim below. Second, the only provision of chapter 110B affording relief to unregistered marks such as Kazmaier's, section 12, is inapposite as it authorizes only injunctive relief, a moot issue. *See* note 1, *supra.* Thus, we view Kazmaier's claim as exclusively one for damages controlled by Massachusetts common law.

**3.** Generic, as opposed to descriptive, names do not receive trade name protection. *S.S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 696 (1st Cir.1979), *aff'd on rehearing*, 634 F.2d 1 (1980); J. McCarthy, *Trademark and Unfair Competition* § 12.

the secondary meaning, if one exists; and whether Wooten sufficiently distinguished himself from Kazmaier to avoid public confusion.

All but one of the above issues were resolved by the district court in Kazmaier's favor for purposes of summary judgment. The court expressly assumed that "the World's Strongest Man" is a descriptive phrase, not a generic one, and that Kazmaier had established a prior secondary meaning. The only one of the above issues that the district court resolved *against* Kazmaier was whether Wooten sufficiently distinguished his identity in the commercial to avoid public confusion. Normally such an issue would be for the trier of fact, but we agree with the court below that its resolution in the instant situation is so clear as to warrant a ruling that, as a matter of law, an inference of possible confusion cannot reasonably be drawn from these facts.

It is uncontroverted that in the commercial forming the basis of Kazmaier's complaint, Wooten was introduced as "the World's Strongest Man, John Wooten" and appeared on-screen, readily recognizable, during most of the film. Where, as here, the persons subject to potential confusion have easily distinguishable names and likenesses, we find it hard to imagine a more effective way of distinguishing one from the other than to state his name and present his likeness, as was done in this situation.

Kazmaier suggests that use of this descriptive phrase by anyone except the original user is inappropriate as, by its very nature, it can be applied to only one individual and draws its value from the implicit singularity of its object, *i.e.*, "the World's Strongest Man." Under this view, use by anyone except Kazmaier necessarily re-sults in confusion, given the name's implication of uniqueness.

This argument, however, flies in the face of established Massachusetts law. *See, e.g., Union Oyster House*, 316 Mass. at 544–45, 55 N.E.2d at 943 ("no one can altogether appropriate to himself any part of the English language, and ... when, through accustomed use in association with a person or his product and by common understanding in the market, words forming part of the language have come to mean, if used alone, him or his product, a competitor may nevertheless use them, if he accompanies their use with something which will adequately show that the first person or his product is not meant").

The argument also makes little sense in this context. "The World's Strongest Man" is a boast rather than an objective representation. No one is likely to believe that either Kazmaier or Wooten has scoured the world over for competitors for the title, met all challenges, and won, in actual fact, the title "the World's Strongest Man." It is scarcely to be assumed that only one individual would venture to use the title and that anyone using the title is the sole source of goods and services pertaining to the title. *Cf.* J. McCarthy, *Trademarks and Unfair Competition* §§ 11.19, 11.19(C).[4]

■ In sum, the public would not be confused by Wooten's use of this label whatever its prior association with Kazmaier given Wooten's use of the title explicitly in conjunction with his own name and likeness, nor could the public be misled by the singularity of the title given its inherent implausibility. We therefore agree with the district court that there is no genuine issue of material fact as to trade name infringement, and that defendants were en-

---

**4.** "It is obvious that some assumptions must be made regarding the educational level and information that the imaginary 'reasonable purchaser' possesses in determining whether a mark is just arbitrary or is deceptive. For example, a mark GEORGE WASHINGTON ATE HERE for restaurant services was held non-deceptive even though George Washington never ate at that restaurant. It was assumed that the normal consumer would not be led to think that the mark was literally true, and was informed sufficiently to know that such a statement was historically impossible, and therefore was a merely fanciful mark." J. McCarthy, *Trademarks and Unfair Competition* § 11.19(C).

titled to summary judgment as to that claim.

### B. *Section 93A Claim*

■ The question in an action based on Mass.Gen.Laws ch. 93A is "did [defendants] do anything unfair or deceptive?" *Professional Economics, Inc. v. Professional Economic Services, Inc.*, 12 Mass.App. 70, 80, 421 N.E.2d 1221, 1227 (1981). A practice may be "deceptive" under chapter 93A [5] if it "could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 777, 407 N.E.2d 297, 301 (1980) (quoting *Lowell Gas Co. v. Attorney General*, 377 Mass. 37, 51, 385 N.E.2d 240, 249 (1979) ).

Beyond considerations of "deception," Massachusetts courts consider

> (1) whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Id.* See also *PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915, 917 (1975).

■ We see nothing possibly unfair or deceptive in the situation here. Kazmaier himself was not deceived. And, as discussed in section A, *supra,* the commercial's audience would not have confused Wooten for Kazmaier, since the claim to be "the World's Strongest Man" was accompanied by Wooten's name and likeness. Indeed, even supposing the audience mixed the two up, it is hard to see how its conduct would have been materially affected. The audience's preferences in automobiles, or its compulsion to buy or not buy, would scarcely be altered by any mistake as to the identity of the strong man unsuccess-

fully attempting to hold back an accelerating Ford Tempo.

Kazmaier has premised his chapter 93A claim solely on the allegedly deceptive aspects of defendants' use of his alleged trade name and has not pleaded any independent wrong cognizable under chapter 93A. Because defendants were within their rights to use the contested title and in any case could not have "deceived" anyone for purposes of chapter 93A, and because, even under the harshest view of defendants' actions, their conduct was "not within any recognized conception of unfairness, [was] neither immoral, unethical, oppressive nor unscrupulous," *id.* at 596, 321 N.E. at 918, we affirm the district court's dismissal of Kazmaier's chapter 93A claim.

### C. *Malicious Interference with Business Expectations*

■ Kazmaier claims that defendants unlawfully interfered with his business expectations in that the commercial spoiled contract negotiations he was then conducting with the United States Football League. To state a claim for the tort of interference with contractual relations in Massachusetts, the plaintiff must establish that defendants committed

> (1) intentional and wilful acts (2) calculated to cause damage to the plaintiffs in their lawful business, (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant, (which constitutes malice), and (4) actual damage and loss resulting.

*Chemawa Country Golf, Inc. v. Wnuk*, 9 Mass.App. 506, 509, 402 N.E.2d 1069, 1072 (1980) (quoting *Walker v. Cronin*, 107 Mass. 555, 562 (1871) ). Kazmaier seems to be complaining of interference with prospective business opportunities, which is "a recognized extension of the more typical tort." *Id.* Thus, in Massachusetts,

---

**5.** Because chapter 93A does not provide a definition of what constitutes an unfair or deceptive act or practice, Massachusetts courts have relied on standards derived from section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) (1970). *See PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 595, 321 N.E.2d 915, 917 (1975).

"[o]ne who interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation."

*Chemawa Country Golf, Inc. v. Wnuk,* 9 Mass.App. at 509 n. 3, 402 N.E.2d at 1072 n. 3 (quoting *Restatement (Second) of Torts* § 766B (1979) ).

■ Kazmaier fails to state a claim under this theory because "it is an essential element of the tort that the defendant act without justifiable cause," *id.* at 510, 402 N.E. at 1072, and no reasonable jury could find that defendants acted without right or justifiable cause and therefore with the requisite malice. It would be completely unreasonable to find that defendants engaged in the expensive process of producing and airing a television commercial simply to frustrate Kazmaier's business endeavors. And we have already held that defendants acted legally and fairly in using the phrase "the World's Strongest Man" in their commercial for purposes of promoting their product. We therefore affirm the district court's decision to dismiss Kazmaier's tort claim.

### D. *Unfair Competition Claim of "Palming Off"*

■ It is established that under Massachusetts law a plaintiff claiming unfair competition may show *either* "palming off" *or* that the features of the product in question have acquired a secondary meaning such that confusion as to its source is likely to arise if defendant is allowed to copy them.

*Pic Design Corp. v. Bearings Specialty Co.,* 436 F.2d 804, 807 (1st Cir.1971) (emphasis in original). Because the latter claim is foreclosed by our earlier holding, *see* section A, *supra,* we are solely concerned with the former, *i.e.,* Kazmaier's contention that defendants were attempting to "palm off" Wooten as Kazmaier.

 "Palming off" is defined as "an attempt by one person to induce customers to believe that his products are actually those of another." *Remco Industries v. Toyomenka, Inc.,* 286 F.Supp. 948, 954 (S.D.N.Y.), *aff'd,* 397 F.2d 977 (2d Cir.1968). *See Pic Design,* 436 F.2d at 807 n. 3. As was discussed in section A, *supra,* defendants did not attempt to induce anyone into thinking that "the World's Strongest Man, John Wooten" was "the World's Strongest Man, William Kazmaier." They used Wooten's name and image prominently in the commercial, thereby sufficiently distinguishing Wooten from Kazmaier for purposes of this claim as well as the trade name appropriation and infringement claim.[6]

*The judgment of the district court is affirmed.*

---

**6.** Kazmaier does not pursue his frivolous negligence claims on appeal.