**AMERICANA TRADING INC., doing business as AMTRA, a Connecticut corporation, Plaintiff–Appellant,**

v.

**RUSS BERRIE & CO., a New Jersey corporation, Defendant–Appellee.**

No. 88–15334.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1992.

Decided June 2, 1992.

---

John P. Sutton and Maria S. Cefalu, Limbach, Limbach & Sutton, San Francisco, Cal., for plaintiff-appellant.

Dirks B. Foster, John A. Hughes, Townsend and Townsend, San Francisco, Cal., for defendant-appellee.

Before: HALL and WIGGINS, Circuit Judges, and BURNS, District Judge.*

CYNTHIA HOLCOMB HALL, Circuit Judge:

Americana Trading ("Amtra") appeals the district court's grant of summary judgment to Russ Berrie & Co. ("Russ") in Amtra's trademark infringement suit against Russ. We reverse and remand for trial.

---

* The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation.

## I

In June 1984, Amtra began selling pairs of stuffed bears under the trademark "Wedding Bears." (Figure 1). Each pair consisted of a teddy bear dressed as a bridegroom and another dressed as a bride. As sold to consumers, the bears were connected by strips of velcro on the bears' hands. The product experienced substantial success, and by 1986 Amtra was selling an entire line of "Wedding Bears" products, including the bride and groom pair in various sizes as well as an entire bridal party of stuffed bears sold separately from the bride and groom set. Amtra's products received coverage on national television and newspapers, and Amtra claims it made "significant" advertising expenditures to promote the bears.

Amtra received a federal registration for its "Wedding Bears" trademark on June 25, 1985. Amtra subsequently licensed use of its "Wedding Bears" mark to Commonwealth Toys & Novelty ("Commonwealth"), which undertook a million-dollar advertising campaign. Commonwealth procured coverage in the New York *Post* and on television news, and once succeeded in having the bears given away as a prize on the "Newlyweds" television program.

In October 1985, Russ decided to market teddy bears dressed as brides and grooms. (Figure 2). A variety of names were considered for these products: "Wedding Bear," "Bearly-in-love," and "Forever Bride and Forever Groom." Russ chose to name the two products "Bride Bear" and "Groom Bear." A tag sewn into the bottom (or rump) of Russ's bears, however, bore the notation "Wedding Bear" in large letters. (Figure 3). This tag, known as a "content tag" because it identifies the materials used to manufacture the bear, was made of fabric and designed to remain permanently on the bears. The back of the content tag bore Russ's housemark and "RUSS BERRIE & CO., INC." Russ's bears also had two tags displayed prominently on the front of the bears, designed to be snipped off after purchase, which bore Russ's housemark and its "Caress" trademark in large letters. The term "Wedding Bear" was not used on promotional or sales materials.

Russ's product planner stated in her deposition that she chose the term "Wedding Bear" for the content tag because "I thought it was a descriptive name for bears dressed in wedding attire." Internal Russ memoranda, marked "confidential," indicate that Russ was aware of Amtra's Wedding Bears line as early as January 30, 1985. For example, a memorandum dated September 18, 1985, appears to be a report on sales volume of Amtra's Wedding Bears at a particular retail outlets: "[At] Paper Tiger, Paramus Park[.] Sold 9 of 12 pair in approximately two weeks. Has reordered 24 pieces. While in Boston Valerie and I found these selling in Noah's. Seven of 12 pair sold in less than two weeks."

In November 1985, about the time that Russ was planning its Bride and Groom Bears, Amtra's attorney wrote to Russ to complain that Russ's "The Newlyweds" Bears infringed Amtra's "Wedding Bears" mark. Russ denied that "The Newlyweds" was an infringement. "The Newlyweds" were a line of Russ goods, different from "Bride and Groom Bears," that Russ had sold since 1984. "The Newlyweds" were listed on Russ order forms under the category "Wedding."

Russ's Bride and Groom Bears were first sold in January or February 1986. In August 1987, Amtra filed suit in district court for trademark infringement and related state law claims. On October 2, 1987, the district court entered a preliminary injunction enjoining Russ from using the "Wedding Bear" mark. Russ complied and has not used the mark since.

In response to Russ's motion for summary judgment, Amtra offered evidence that consumers and retailers were confused by Russ's use of the "Wedding Bear" mark on its Bride and Groom Bears. Vernon Goldsmith, a principal of Amtra, visited several retail stores and asked each if it carried "Wedding Bears" brand stuffed animals. In several instances, the clerks led him to Russ's "Wedding Bear" products. Goldsmith's solicitations of orders were rebuffed by potential customers

because the retailers were already carrying Russ's bears. According to Goldsmith, Amtra lost accounts it had already procured because Russ offered its Bride and Groom Bears at a lower price. Also according to Goldsmith, Russ's sales steadily increased at the expense of Amtra's sales. Finally, a letter mailed to Amtra expressed enthusiasm for Amtra's products but enclosed a picture of Russ's bears.

The district court granted Russ's motion for summary judgment, and Amtra now appeals.

## II

■ This court reviews a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the correct substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–41 (9th Cir.1989).

■ Russ does not attempt to challenge the validity of Amtra's federally registered mark. Russ argues only that its use of "Wedding Bear" did not result in a likelihood of confusion between Russ's and Amtra's goods and, therefore, that Russ did not infringe Amtra's trademark. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir.1987) (likelihood of confusion is test for trademark infringement). Amtra had the burden of proof to show that consumers were likely to believe that Russ's bears were manufactured by Amtra. *See id.* Alternatively, Amtra could prove "reverse confusion," namely that purchasers would believe that Russ manufactured Amtra's bears. *See id.; see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) (likelihood of any confusion as to the relationship between trademark owner and alleged infringer may constitute infringement); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1371–72 (10th Cir.1977) (origin of modern reverse confusion doctrine), *cert. dismissed*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

■ We will apply the six-factor test used by the district court to determine likelihood of confusion: (1) Strength or weakness of the marks; (2) similarity in appearance, sound, and meaning; (3) class of goods in question; (4) marketing channels used; (5) evidence of actual confusion; and (6) intent of the defendant. *See J.B. Williams Co. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 191 (9th Cir.1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976); *see also Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1454 n. 3 (9th Cir.1991) (no single test mandated by this circuit). We consider each factor in turn.

### A

■ The district court first held that there was insufficient evidence as a matter of law that "Wedding Bears" had come to be associated with Amtra, and that Amtra's mark was therefore "weak." Both parties agree that "Wedding Bears" is a descriptive mark. Descriptive marks are generally regarded as weak and entitled to less protection than fanciful or arbitrary marks. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir.1979). We believe, however, that the district court gave insufficient weight to the presumptive effect of Amtra's federal registration. As applied to a descriptive mark such as Amtra's, the registration carries a presumption of secondary meaning. *Lois Sportswear*, 799 F.2d at 871 ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection."); 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 15:11, at 687 (2d ed. 1984). Russ therefore had the burden to prove that secondary meaning had not attached if it wished to argue that Amtra's mark was weak. To the extent that secondary meaning had attached to a descriptive mark, the mark was rendered stronger and more worthy of protection.

### B

■ The district court ruled that the marks were not similar in sound, appear-

ance, and meaning because Russ only displayed "Wedding Bear" on the content tag sewn on the rear of the bears. The district court correctly noted that similarity "must be considered in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase of the [products]." *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985). According to the district court, Russ's use of "Wedding Bear" was not similar to Amtra's because Russ "did not use that phrase on its hang tags, displays, advertising, or any other material which is apparent to the purchasers in the retail store." Russ argues that the content tag "did not, in essence, actually appear in the marketplace at all."

■ We do not believe the district court was equipped at summary judgment to conclude whether the "Wedding Bear" mark was apparent to consumers or not. The district court and Russ both relied upon *Lindy Pen*, but neglected to notice that *Lindy Pen* reviewed a finding by a district court based upon "[o]verwhelming evidence at trial." *Id.* The district court's ruling is highly dependent upon assumptions of fact that should have been sent to trial for resolution.

As Amtra argues, the ruling assumed that a prospective customer never decides to buy a stuffed animal because he or she admires one owned by a friend and that a customer would not ask for the product by name. For example, in *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817 (9th Cir. 1980), Levi Strauss argued that the use of a cloth pocket tab on blue jeans by Wrangler infringed Levi's trademark on the pocket tab as used on blue jeans. We wrote that

> Wrangler focuses upon the condition of its pants when sold and limits its argument to "point of sale" circumstances. However, ... point of sale materials are removed by the purchaser and have no confusion-obviating effect when the pants are worn. Wrangler's use of its projecting label is likely to cause confusion among *prospective* purchasers who carry even an imperfect recollection of Strauss's mark and who observe Wrangler's projecting label after the point of sale.

*Id.* at 822 (emphasis in original). Thus, the temporary hang-tags bearing Russ's housemark are of only limited value in diluting the confusing effect of Russ's use of Amtra's trademark. Moreover, the ruling assumed that stuffed animals are always displayed in an orderly fashion, sitting up, and thus that no customer would find the animal in a position where the content tag was readily visible. The ruling also assumed that consumers of stuffed animals would not examine the content tag to ascertain the identity of the manufacturer in an effort to determine whether the manufacturer is known for good quality.

■ Finally, the district court appeared to rely upon Russ's argument that the prominence of Russ's housemark, on temporary hang-tags, would negate any likelihood of confusion. We disagree. First, this ground for the district court's holding again makes factual assumptions about potential consumers' reactions that are unwarranted at summary judgment. Second, the prominence of Russ's housemark may serve to create reverse confusion that Russ, and not Amtra, is the source of Amtra's "Wedding Bears." Russ's housemark therefore does not, as a matter of law, render its use of "Wedding Bear" non-similar to Amtra's trademark. *See AMF*, 599 F.2d at 350–52 (mark similar to plaintiff's trademark, displayed in conjunction with housemark and in markedly different typestyle than that used by plaintiff held infringing). Indeed, use by Russ of its housemark along with Amtra's trademark may "be an aggravation and not a justification, for it is openly trading in the name of another upon the reputation acquired by the device of the true proprietor." *Menendez v. Holt*, 128 U.S. 514, 521, 9 S.Ct. 143, 144, 32 L.Ed. 526 (1888). The district court erred by finding no genuine issue of material fact as to similarity of appearance, sound, and meaning.

### C

Russ does not contest that its products and Amtra's are both members of the same class of goods and sold through the same marketing channels. Prongs three and four therefore weigh in favor of Amtra. The district court so ruled.

■ The fifth factor is evidence of actual confusion. The district court found, without elaboration, that Amtra had not created a genuine issue of material fact as to actual confusion. Amtra, however, proffered testimony by its owner that retailers were confused about the source of Russ's and Amtra's bears. *AMF,* 599 F.2d at 352 (confusion among retailers and consumers is relevant). Amtra also proffered a letter from a customer indicating that the customer believed Russ's products to have been manufactured by Amtra. *Compare Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 445 (9th Cir. 1980) (reviewing district court finding and agreeing that evidence of a few misdirected letters was weak evidence of confusion) *with American Scientific Chem., Inc. v. American Hosp. Supply Corp.,* 690 F.2d 791, 793 (9th Cir.1982) (reviewing district court finding and holding that 28 misdirected letters were strong evidence of confusion to prove secondary meaning). We believe Amtra presented sufficient evidence of actual confusion which, if believed by the trier of fact, would aid Amtra's infringement claim.

### D

■ Finally, the district court found that Amtra had presented a genuine issue of material fact as to Russ's intent to infringe. Given the chronology of Russ's marketing of its Bride and Groom Bears and the internal memoranda disclosed during discovery, the trier of fact would have sufficient evidence to conclude that Russ set out to intentionally infringe Amtra's federally registered mark. Such a finding that Russ had intentionally set out to confuse retailers and consumers would weigh toward a finding of infringement. *See Blue Bell,* 632 F.2d at 822 ("A latecomer who adopts a mark with intent to capitalize upon a market previously developed by competitors in the field must at least prove that his effort has been futile.") (citation omitted). The district court correctly held that Amtra had raised a genuine issue of material fact concerning Russ's intent to infringe.

### III

In sum, Amtra presented sufficient evidence to survive summary judgment. The few cases supplied to us by Russ affirming grants of summary judgment to defendants in trademark infringement actions do not convince us otherwise. For example, in *Kazmaier v. Wooten,* 761 F.2d 46 (1st Cir. 1985), the First Circuit considered whether plaintiff could claim the exclusive right under Massachusetts trademark law to refer to himself as "The World's Strongest Man." The court affirmed summary judgment for defendants, holding that defendants' use of the phrase was unlikely to confuse because the phrase was always used in conjunction with the proper name of one of the defendants. *Id.* at 50. Furthermore, the court wrote that "[i]t is scarcely to be assumed that only one individual would venture to use the title and that anyone using the title is the sole source of goods and services pertaining to the title." *Id.; see also Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1248–49 (8th Cir.1990) (summary judgment for defendant in trade dress infringement suit affirmed where allegedly infringed features of plaintiff's magazine were too functional to warrant protection and where defendant's evidence showing lack of confusion overwhelmed plaintiff's evidence of "isolated instances of confusion.").

In *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482 (1st Cir.1981), the First Circuit also affirmed a grant of summary judgment to defendants. In that case, the infringing one-word mark was always used as part and parcel of a much longer, multi-word trademark and was therefore unlikely to confuse consumers. *Id.* at 487. Defendants' goods were marketed in vastly different boxes. *Id.*

Moreover, plaintiffs' goods were expensive and unlikely to be confused with defendants' mass-marketed goods. *Id.* at 488. Plaintiffs adduced only a "single, feeble and indirect example of possible consumer confusion" after four years of alleged infringement, and no evidence whatsoever that defendant intentionally appropriated plaintiffs' mark. *Id.* at 490–91. Thus, even though the court viewed plaintiffs' mark as a strong one, *id.* at 491–92, the court held that plaintiffs had failed as a matter of law to demonstrate likelihood of confusion.

The extreme facts of *Kazmaier* and *Pignons* caution against their application to the case at hand. Here, Amtra holds a registered and presumptively strong mark. Russ's allegedly infringing mark is identical for all practical purposes to Amtra's, and is displayed on the only permanent tag affixed to Russ's bears. The goods themselves are virtually identical and sold through similar channels. Amtra has proffered evidence of actual confusion on the part of consumers and retailers as well as evidence of intent on the part of Russ to intentionally infringe Russ's mark. This is certainly not a case where we can say, as a matter of law, that Russ has not infringed Amtra's mark.

We therefore REVERSE the judgment of the district court and REMAND for trial on the issue of infringement.[1]

JAMES M. BURNS, District Judge, dissenting:

I respectfully dissent.

---

**1.** Amtra cursorily challenges the district court's grant of summary judgment as to Amtra's state law claims. Since Amtra argues only that determination of its state law claims hinge on the same reasoning as its federal trademark claim, and has provided no argument in support of its contention, we accept Amtra's assertion at face value and do not reach the state law claims. Amtra remains free to assert its state law claims on the same bases as its federal claims.