978 F.2d 715
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard E. KAFFENBERGER, Plaintiff-Appellant,
v.
THE CITY OF BULLHEAD CITY, ARIZONA, an Incorporated Arizona
City; Steven R. Buck, Member of City Council; Husband to
Doris Anne Buck; John L. Day, Member of City Council;
Husband to E. Darlene Day; Dean Hackett, Member of City
Council; husband; Martin Kooken, Member of City Council;
Husband to Barbara; Robert C. Rogge, Member of City
Council; Husband to Cecile P.; Glen E. Tudor, Member of
City Council, Defendants-Appellees.
 No. 91-16368.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 13, 1992.*
Decided Oct. 16, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Former Bullhead City Manager Richard E. Kaffenberger appeals pro se the district court's order granting summary judgment in favor of the City of Bullhead ("City") in his employment discrimination action. He contends that the district court erred by finding that his discharge did not violate "public policy" under Arizona law. Specifically, Kaffenberger argues that he was discharged for his "whistleblowing" regarding the alleged improper actions of the City Attorney. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We review de novo a district court's grant of summary judgment. Fuller v. Frank, 916 F.2d 558, 561 (9th Cir.1990). We review the evidence in the light most favorable to the nonmoving party to determine whether there was any issue of material fact and whether the substantive law was applied correctly. Americana Trading Inc. v. Berrie & Co., 966 F.2d 1284, 1287 (9th Cir.1992).
 
 
 4
 Arizona law recognizes a public policy exception to the at-will employee doctrine. Wagner v. City of Globe, 722 P.2d 250, 255-56 (Ariz.1986) (en banc); Wagenseller v. Scottsdale Memorial Hosp., 710 P.2d 1025, 1031 (Ariz.1985) (en banc). While an employer may discharge an employee for good cause or for no cause, he cannot discharge for bad cause--in violation of public policy. Wagenseller, 710 P.2d at 1033. Reporting known or suspected illegality, i.e. whistleblowing, which serves a public purpose, is protected activity under the public policy exception. Wagner, 722 P.2d at 256-57. To establish a claim of wrongful discharge, a plaintiff must prove: (1) he engaged in protected activity; and (2) he was discharged because he engaged in protected activity. Id., at 257. An employee's actions which are "merely private or proprietary" do not constitute protected activity. Id.
 
 
 5
 Here, the City council voted to remove a parcel of land from a flood plain, in order to build a shopping mall. City Attorney Stephen Avilla had recommended a three-year term to complete the removal, but the council voted to complete the removal in two years. On August 20, 1987, Avilla sent a final version of the deed of trust to the County Clerk's office for filing. An addendum to the deed, however, incorrectly indicated that the City would complete the removal within three years instead of two years. Avilla contemporaneously mailed a letter to David Kruetzberg, the mall developer's attorney, indicating that the City would complete the removal within two years.
 
 
 6
 On August 27, 1987, Kruetzberg sent Avilla a letter indicating that the deed of trust erroneously contained a three-year term. Kruetzberg wrote that he assumed the three-year term was a clerical error in light of Avilla's letter indicating a two-year term. Between September 7 and 11, 1987, Avilla informed several of the City council members about the clerical error. He also mailed a letter, apologizing for the error, and corrected addendum to Kruetzberg, on September 10, 1987. Avilla instructed his secretary to make copies of the letter for each of the City council members.
 
 
 7
 Prior to September 10, 1987, Kaffenberger, then-City Manager, received a copy of the erroneous addendum to the deed of trust. It is undisputed that animosity existed between Kaffenberger and Avilla. Kaffenberger took the erroneous addendum to the City Chief of Police and requested that inspectors question the mall developers regarding the mistake. An inspector discovered a copy of Kruetzberg's letter, dated August 27, 1987, indicating that the addendum contained a mistake. Kaffenberger then instructed the police chief to brief selected council members about the discrepancy. The secret briefings took place on September 10 and 11, 1987. In addition, on the evening of September 10, 1987, Kaffenberger, the police chief and other individuals searched Avilla's office without a search warrant. Kaffenberger insisted that they were searching for the deed of trust. Nonetheless, they removed cassettes from Avilla's brief case, which were unrelated to the deed of trust.[1] Kaffenberger told an individual to copy the tapes. Others items were also seized.
 
 
 8
 On September 11, 1987, a police inspector, present during the initial search, obtained a search warrant alleging that Avilla had been or was attempting to tamper with public records. No evidence, however, indicated that Avilla tampered with the deed of trust after it was filed. The inspector and others conducted a second search of Avilla's office and again seized items.
 
 
 9
 The previously-briefed selected council members held an emergency meeting on September 11, 1987, and voted to suspend Avilla, based on Kaffenberger's representations. On September 15, 1987, the full City council met and Avilla informed them about Kaffenberger's actions and the seizure of tapes from his office. Previously-unbriefed council members chastised their colleagues for holding the prior secret meeting and indirectly criticized Kaffenberger for his role in the search and seizure.
 
 
 10
 The City council members terminated both Kaffenberger and Avilla because they were uncertain whether any criminal conduct had occurred. Based on Kaffenberger's search of his office, Avilla threatened to sue the City. The City, however, avoided litigation by settling with Avilla for $40,000.00.
 
 
 11
 Kaffenberger contends that "the termination was pretextural [sic] and in retaliation for carrying out my duties as city manager and that ... [he] was wrongfully discharged in violation of public policy." See Appellant's Opening Brief at 4. We disagree.
 
 
 12
 Kaffenberger's involvement of the police, prior to confronting Avilla, showed that he sought to advance private interests as opposed to carrying out a job-related function. He also found Avilla's letter to Kruetzberg, the mall developer's attorney, explaining that an error had been made in the addendum and that it would be corrected. We agree with the district court's finding that "Kaffenberger's actions demonstrate his overzealousness in pursuing his investigation and turning a simple mistake into a full-blown investigation." See Order 7/22/91 at 11. Therefore the district court did not err by finding that Kaffenberger did not engage in the type of whistleblowing protected by public policy, see Wagner, 722 P.2d at 257, and properly granted summary judgment, see Fuller, 916 F.2d at 563.
 
 
 13
 Because Kaffenberger stated an arguable claim, irregardless of his misperception of the law, we deny appellee's request for costs, damages, and attorney fees.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The cassettes contained interviews conducted by Avilla regarding Kaffenberger's alleged connection to unrelated improper activities