ECHOMAIL, INC., Plaintiff,

v.

**AMERICAN EXPRESS CO. and International Business Machines Corp., Defendants.**

**Civil Action No. 05–11318–NMG.**

United States District Court, D. Massachusetts.

July 14, 2006.

John F. Farraher, Jr., Evan Georgopoulos, Greenberg Traurig LLP, Stephen D. Poss, Goodwin Procter, LLP, Boston, MA, Louis Smith, Greenberg Traurig LLP, Florham Park, NJ, Thomas G. Rafferty, Rowan D. Wilson, Cravath, Swaine & Moore LLP, New York City, for Defendants.

Alan D. Rose, Jr., Alan D. Rose, Sr., Lisa A. Tenerowicz, Rose, Chinitz & Rose, Boston, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiff, EchoMail, Inc. ("Echo-Mail"), is a provider of web-based software, hardware and services designed for e-mail management. It has filed claims against defendants, American Express Company ("AmEx") and International Business Machines Corporation ("IBM"), for 1) misappropriation of trade secrets, 2) unfair competition, 3) unfair and deceptive acts and practices, and, against AmEx only, 4) breach of contract, 5) breach of the covenant of good faith and fair dealing and 6) interference with contractual relations.

Currently pending before the Court is a motion of AmEx for partial summary judgment and a motion of IBM for judgment on the pleadings.

### I. *Background*

In July, 1999, plaintiff entered into a contract with AmEx which was renewed through 2004. In 2004, the parties entered into another contract but difficulties ensued in its implementation. In the Spring of 2005, AmEx began a request-for-proposal ("RFP") process seeking bids for services that were then being provided by EchoMail. When EchoMail inquired about the need for the RFP, AmEx responded that it was merely a "formality".

In late April, 2005, AmEx notified Echo-Mail that it would conduct an "architecture review" of an upgraded version of Echo-Mail's product to ensure that implementation of that upgrade would be successful. In preparation for the review, EchoMail provided AmEx certain proprietary information and requested that AmEx forward to it a list of all likely attendees of the review session.

The review took place on May 4 and 5, 2005, with some employees of AmEx participating in person at EchoMail's facility in Cambridge, Massachusetts, and others participating telephonically. Two IBM employees attended the review even though they had not been listed among possible participants and did not identify themselves as IBM representatives at the start of the review process. According to plaintiff's complaint, well into the review process and after EchoMail had revealed confidential and proprietary information including the "code" to its technology, one of the IBM employees disclosed that he worked for IBM and that the information revealed by EchoMail "created a conflict".

IBM and AmEx have an agreement pursuant to which IBM provides certain products and services to AmEx. EchoMail asserts that IBM has sought to obtain its confidential and proprietary information since 1996. On several occasions, IBM allegedly inquired about establishing a business relationship with EchoMail. Plaintiff avers that it would not have consented to the "architecture review" had it known that IBM personnel would be present.

AmEx purportedly praised EchoMail during the review and stated that it was a success at that time. Approximately three weeks later, however, it informed Echo-Mail that its product had failed the review and that, consequently, EchoMail would not be considered in the new RFP process. AmEx is also alleged to have orally terminated its contract with EchoMail at that time. The following day, plaintiff notified AmEx in writing that it was terminating the parties' contract. As a result of those events, a business relationship between EchoMail and a company associated with AmEx also ceased. Plaintiff alleges that the architecture review was merely a pretext to conceal the true purpose of AmEx and IBM, namely, to obtain EchoMail's confidential and proprietary technology so

that they could compete directly against EchoMail.

This matter was originally filed in Massachusetts Superior Court but removed by defendants to this Court on the basis of diversity jurisdiction. Defendants denied liability in their answers to the complaint. AmEx, moreover, asserted counterclaims against EchoMail for 1) breach of contract, 2) breach of the covenant of good faith and fair dealing, 3) replevin, 4) conversion, 5) unjust enrichment, 6) restitution, 7) breach of confidential duty and 8) unfair and deceptive acts and practices. In support of its counterclaims, AmEx alleges that EchoMail unilaterally terminated the parties' contract in contravention of its terms and despite prepayment for services by AmEx. AmEx also asserts that EchoMail has wrongfully retained possession of AmEx's property, including computer hardware and confidential customer information, despite requests by AmEx for return of that property.

Upon removal of the case to federal court on June 23, 2005, EchoMail moved for a preliminary injunction to prevent both defendants from using or disseminating its trade secrets. After hearing the parties on that motion, the Court directed them to confer in good faith toward negotiating mutually satisfactory nondisclosure agreements. EchoMail and IBM reached an agreement thereby mooting EchoMail's request for a preliminary injunction against IBM but EchoMail and AmEx failed to come to terms. On July 15, 2005, the Court denied EchoMail's motion for a preliminary injunction against AmEx on the grounds that plaintiff had failed to demonstrate a likelihood of success or irreparable injury. *See Echomail, Inc. v. Am. Express Co.,* 378 F.Supp.2d 1 (D.Mass.2005).

AmEx presently seeks summary judgment on its replevin counterclaim and IBM seeks judgment on the pleadings with respect to all claims against it.

## II. *Motion for Summary Judgment on Replevin Counterclaim*

### A. *Legal Standard*

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". *Id.*

Once the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court is to view the entire record in the light most hospitable to the nonmovant and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). Summary judgment is appropriate where the Court determines, after viewing the record in the nonmovant's favor, that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### B. *Discussion*

AmEx contends that it is entitled to replevin of 1) a SUN E450 database server

that it purchased in order for EchoMail to service its account (hereinafter, "the server") and 2) e-mail communications to and from AmEx customers which purportedly contain confidential information (hereinafter, "confidential information"). The server and confidential information are both located at EchoMail's facilities with the confidential information stored not only on the server but also on archival "back-up" tapes ("the back-up tapes"). Pursuant to the parties' contract, plaintiff was required to maintain archived records of AmEx's data and AmEx was to provide storage for those records. Hardware such as the server was owned by AmEx while EchoMail retained ownership of proprietary products configured and installed on that hardware.

Under New York law (the location of AmEx and law governing the operative agreement between the parties), an action in replevin lies where the claimant "demonstrate[s] that he has an immediate and superior right to possession of the chattel including proof of ownership". *Van Brunt v. Rauschenberg*, 799 F.Supp. 1467, 1473 (S.D.N.Y.1992). Where an original owner seeks replevin of property held by a lawful possessor, the owner must first demand return of that property. *Hoelzer v. City of Stamford*, 933 F.2d 1131, 1136 (2d Cir.1991). A claim for replevin under Massachusetts law (EchoMail's location) is similar in that the claimant is required to demonstrate that the goods sought exceed $20 in value and were taken or are being detained from someone entitled to their possession. *See* Mass. Gen. Laws ch. 247, § 7.

Here, AmEx does not dispute that EchoMail, at one point, lawfully possessed the server and confidential information. EchoMail does not dispute that AmEx demanded return of the server and confidential information or that items of that nature are subject to a replevin action.

Furthermore, EchoMail does not challenge the contention that AmEx is the owner of the server and confidential information.

The crux of EchoMail's opposition to the replevin counterclaim is that the confidential information belonging to AmEx is imbedded (in both the server and the back-up tapes) in a proprietary database owned by EchoMail. It maintains, therefore, that AmEx is not entitled to the server and confidential information in their current state because AmEx lacks an "immediate, exclusive and unqualified" right to possession of that property in such state. *da Silva v. Coffee Connection, Inc.*, 1994 WL 879508, No. 943561, at *1 (Mass.Super.Ct. Nov. 17, 1994). In order for EchoMail to return the server and confidential information to AmEx without compromising the confidentiality of its database, it would need to extract and transfer the confidential information into a different, "flat file" format at a cost of approximately $120,000. EchoMail does not oppose returning the property sought by AmEx provided that AmEx pays the cost of extracting its data from EchoMail's database. Thus, the present dispute between the parties, which is unaddressed by their contractual relationship, is less about AmEx's entitlement to the server and confidential information than about which party should pay the cost of returning that property.

EchoMail cites no case law directly apposite to the circumstances presented here. The case law most analogous to the present dispute is decades old and involves the situation where an unsuccessful defendant in a replevin action received credit for the expense of maintaining the property wrongfully held by him. Thus, judgments in replevin for unlawfully held vehicles and machinery have been diminished by amounts attributable to maintenance and repairs to such property. *See Cooper v.*

*Kipp,* 52 A.D. 250, 65 N.Y.S. 379, 380 (N.Y.App.Div.1900) (stating that return of a wagon pursuant to a successful replevin claim was to follow the claimant's payment of repairs to that property); F.G. Madara, Annotation, *Credit for upkeep or other expense in computing damages for use or detention of property in replevin,* 1949 WL 6958, 7 A.L.R.2d 933 (2006) (citing only two cases after 1950).

█ Because AmEx has provided persuasive evidence that it is entitled to possession of the server and confidential information, and EchoMail has not shown that AmEx's property is incapable of being extracted from EchoMail's database, the Court will allow AmEx's motion for summary judgment. Furthermore, AmEx will not be required to pay the cost of extraction prior to recovery. First, it was Echo-Mail's decision to store AmEx's property in a proprietary database. Second, Echo-Mail has not proved that it is entitled to retain AmEx's property unless and until AmEx pays for the extraction. The Court's conclusion does not foreclose EchoMail from seeking reimbursement of such costs provided that plaintiff can prove that it is legally entitled to be repaid.

## III. *Motion for Judgment on the Pleadings*

### A. *Legal Standard*

IBM has moved for judgment on the pleadings which the Court is to consider under the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted. The court "must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor". *Pasdon v. City of Peabody,* 417 F.3d 225, 226 (1st Cir.2005) (quoting *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988)) (internal citations omitted). The movant cannot prevail "unless it ap-

pears beyond doubt that the [nonmovant] can prove no set of facts in support of his claim which would entitle him to relief". *Id.*

Review of motions for judgment on the pleadings is, as its name suggests, limited to the pleadings and thus,

> [o]rdinarily a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001) (citation omitted).

### B. *Discussion*

The plaintiff's claims with respect to which IBM now seeks judgment in its favor are 1) misappropriation of trade secrets in violation of Massachusetts and New York law, 2) unfair competition and 3) unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A, § 11 (hereinafter, "Chapter 93A"). Although IBM's contentions are compelling in a number of respects, the Court concludes that the pleadings support plaintiff's legal claims to an extent sufficient to withstand summary disposition at this stage.

#### 1. *Misappropriation of Trade Secrets*

█ A claim for misappropriation of trade secrets under Massachusetts law requires a demonstration that the plaintiff took reasonable steps to preserve the confidentiality of a trade secret which the defendant acquired and used by improper means or by participating in the breach of a confidential relationship. *See Data Gen. Corp. v. Grumman Sys. Support Corp.,* 36 F.3d 1147, 1165 (1st Cir.1994) (citation omitted). The elements of misappropriation of trade secrets under New York law

are similar. The plaintiff must allege possession of a trade secret that the defendant used in breach of an agreement, confidence or duty, or by discovering it through improper means. *See N. Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 43–44 (2d Cir.1999) (citation omitted).

Here, IBM contends that EchoMail has failed to allege a misappropriation claim in two respects. First, it asserts that Echo-Mail did not seek to protect the confidentiality of its information. IBM points out that, once EchoMail learned that an IBM employee was attending the architecture review, it neither asked him to leave nor sought to protect its information in the manner set forth in the parties' then-existing confidential disclosure agreement. Second, IBM asserts that there is no evidence in support of its "use" of any Echo-Mail trade secret.

In response, EchoMail argues that the security precautions it undertook to protect its confidential information were reasonable. By the time it learned that IBM personnel were present at the architecture review, a significant amount of confidential and proprietary information, including its "code", had already been revealed. Furthermore, EchoMail asserts that it has adequately alleged use of its trade secrets by IBM even if it cannot determine, at this point in time, the extent of that use. EchoMail contends, for example, that IBM has used plaintiff's information in its consulting work for AmEx.

■ The facts presented in the pleadings support inferences that the plaintiff made reasonable efforts to protect the confidentiality of its trade secrets and that IBM used information learned during EchoMail's architecture review in order to benefit its business relationship with AmEx. Consequently, the Court will deny IBM's motion for judgment with respect to the misappropriation claim.

## 2. *Unfair Competition*

A state-law claim for unfair competition is similar to a claim brought under the Lanham Act in that the plaintiff must show that the defendant's conduct is likely to cause confusion in the marketplace. *Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.,* 762 F.Supp. 404, 415 (D.Mass.1991) (citing *Kazmaier v. Wooten,* 761 F.2d 46, 52 (1st Cir.1985)). Unlike its federal counterpart, however, a state-law unfair competition claim also requires proof of bad faith. *See Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 149 (2d Cir.1997). *See also Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another.") (citing cases).

IBM contends that plaintiff's unfair competition cannot survive under Massachusetts or New York law because 1) there can be no likelihood of confusion where there is no evidence that IBM has used EchoMail's confidential and proprietary information and 2) there is no evidence of bad faith. In opposition, EchoMail responds that it has alleged use of its information by IBM as well as defendant's bad faith.

■ Although IBM's position with respect to the unfair competition claim is stronger than its challenge to the misappropriation claim, the Court concludes that IBM is still not entitled to judgment on the pleadings. The allegations of Echo-Mail adequately support an inference that IBM acquired and used plaintiff's confidential information in bad faith. While the pleadings contain no facts demonstrating a likelihood of consumer confusion, an inference of such confusion is not irreconcilable

with the present record and the conclusion that confusion exists requires a fact-intensive assessment whose determination at this juncture would be premature.

### 3. Unfair and Deceptive Practices

A successful Chapter 93A claim requires proof that

the defendant's actions were 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' or were 'immoral, unethical, oppressive or unscrupulous' . . .

*Boyle v. Int'l Truck & Engine Corp.*, 369 F.3d 9, 15 (1st Cir.2004) (citations omitted). Because misappropriation of trade secrets under Massachusetts law can, by itself, constitute a violation of Chapter 93A, judgment for IBM on that claim is inappropriate at this time. *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir.2005) (citation omitted).

### ORDER

Based on the foregoing memorandum,

1) the motion of AmEx for summary judgment on its replevin counterclaim (Docket No. 31) is **ALLOWED**, and

2) the motion of IBM for judgment on the pleadings (Docket No. 45) is **DENIED**.

**So ordered.**