**AURA COMMUNICATIONS, INC., Plaintiff,**

v.

**AURA NETWORKS, INC., Defendant.**

**No. Civ.A. 0110627JLT.**

United States District Court, D. Massachusetts.

June 8, 2001.

Susan G.L. Glovsky, Hamilton, Brooks, Smith & Reynolds, P.C., Lexington, MA, for Aura Communications, plaintiff.

Brenda R. Sharton, Brooks R. Brown, Adam B. Michaels, Goodwin Procter, LLP, Boston, MA, for Aura Networks Inc., defendant.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Aura Communications, Inc. sues Defendant Aura Networks, Inc. for trademark infringement, trade-name infringement, false designation of origin, dilution, and unfair competition. Aura Communications moves for a Preliminary Injunction to prohibit Aura Networks from using the word "Aura" as its trade name and logo. For the reasons stated below, Aura Communications' Motion is ALLOWED.

### BACKGROUND

Plaintiff has used the names "Aura Communications, Inc.;" "Aura Communications;" and "Aura" as corporate identifiers since 1995. The company's mark consists of a stylized "AURA" with a right-leaning arch and a large dot within the arch. The United States Patent and Trademark Office issued a trademark registration for the mark in 1998.

Aura Communications is a telecommunications-technology company located in Wilmington, Massachusetts. The company develops wireless-communications products, and currently sells a single product—the VoiceLink® Wireless IC chipset. When incorporated into a wireless telephone headset, the VoiceLink® chip allows telephone users to wirelessly operate landline telephones. The company soon will release its LibertyLink® Wireless IC chip that allows for a completely wireless desktop system, including a wireless mouse and keyboard. Aura Communications also tries to attract and hire skilled employees by using recruiters and placing regular advertisements on its website and in *The Boston Globe*.

Defendant has used the names "Aura Networks, Inc.;" "Aura Networks;" and

"Aura" since October 2000, when the company changed its name from Lancast, Inc.—its corporate name since 1981. The company's mark includes the word "Aura" in large letters with "NETWORKS" below in small letters. The word "Aura" is partially surrounded by a right-leaning arch. Aura Networks applied to register its mark with the U.S.Patent and Trademark Office, but registration is pending.

Aura Networks is located in Nashua, New Hampshire—within approximately thirty miles of Aura Communications. The company sells computer-network-infrastructure hardware, such as hubs, switches and media converters, that directs high-speed data traffic over the Internet using fiber-optic technology. Like Aura Communications, Aura Networks' success depends on its ability to attract skilled employees. The company also places regular employment advertisements in *The Boston Globe*.

## DISCUSSION

■ Aura Communications moves for a Preliminary Injunction. For a Preliminary Injunction to issue, the movant must show: (1) the likelihood of success on the merits; (2) irreparable harm if an injunction does not issue; (3) that the threat of injury to the movant outweighs the harm the injunction may inflict on the nonmovant; and (4) that granting the preliminary injunction will not violate the public interest.[1]

## I. Likelihood of Success on the Merits

Aura Communications alleges, *inter alia*, trademark infringement and tradename infringement.

1. *See* Fed.R.Civ.P. 65; *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 33 (1st Cir.1998).

2. *Star Fin. Serv., Inc. v. Aastar Mortgage, Corp.*, 89 F.3d 5, 9 (1st Cir.1996).

### A. Trademark Infringement

■ To prove trademark infringement, Aura Communications must show "(1) that [it] uses and thereby 'owns' a mark; (2) that the defendant is using a same or similar mark; and (3) that the defendant's use is likely to confuse the public, thereby harming plaintiff."[2] Aura Networks does not contest that Aura Communications owns and uses a mark, but only that its mark is dissimilar and unlikely to confuse the public.

### 1. Similarity of the Marks

■ Aura Networks argues that the trademarks are dissimilar because Aura Communications uses the mark "AURA," while Aura Networks used the composite mark "Aura NETWORKS." Conflicting marks are to be compared by analyzing them as a whole rather than comparing them by their component parts.[3]

Aura Communications' mark is the word "AURA" with a right-leaning arch and a large dot within the arch. The Aura Networks mark is virtually identical. It includes the word "Aura," partially surrounded by a right-leaning arch, with the word "NETWORKS" below in a comparatively minuscule font.

■ Although Aura Networks argues that its mark is distinguishable because it includes the "NETWORKS" immediately under "Aura," the most predominant, eye-catching feature of the mark is the word "Aura" with the right-leaning arch. Considering the marks as a whole, they are unquestionably similar.

3. *See Coca–Cola Co. v. Snow Crest Beverages*, 162 F.2d 280, 283 (1st Cir.), *cert. denied*, 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386 (1947).

## 2. Likelihood of Confusion

■ The likelihood of confusion is generally measured by eight factors: (1) similarity of the marks; (2) similarity of the goods; (3) relationship between the parties' channels of trade; (4) relationship between the parties' advertising; (5) classes of prospective purchasers; (6) evidence of actual confusion; (7) defendant's intent in adopting the mark; and (8) strength of the mark.[4] As noted above, the marks are similar.

### a. Similarity of the Goods

Aura Communications states that both Parties' products are similar because they involve communications applications. Aura Networks disagrees. It argues that Aura Communications only sells the VoiceLink® chip that allows for wireless telephone use; whereas Aura Networks sells computer-network-infrastructure products, including hubs, switches, and media converters—all devices that allow information to be transmitted over the Internet via copper wire or fiber-optic cable. Because its products do not relate to wireless-telephone technology, Aura Networks argues that the Parties' products are dissimilar.

Aura Networks fails to recognize that Aura Communications' technological capability is not limited to the VoiceLink® chip. The company will soon release its LibertyLink® Wireless IC chip for digital voice, audio, and data transmissions.[5] This new chip will enable a completely wireless desktop, including a wireless computer mouse, keyboards, etc. It will be used in desktop computers and computer-network-infrastructure devices.[6]

Although Aura Networks does not sell wireless products, the company's products are used in environments that also contain wireless products like the one soon to be sold by Aura Communications. Because both companies sell communications products that enable data, voice, and other information to be transported across electronic channels, their products are similar.

### b. Channels of Trade, Parties' Advertising, and Prospective Purchasers

■ Courts typically analyze together the overlap between the parties' trade channels, advertising, and prospective purchasers.[7] Aura Communications claims that overlap exists because both sell products on the Internet, at the same trade shows, and to the same customers. Aura Networks argues that it does not sell its products over the Internet, but rather uses a thirty-person sales force. The company also notes that it does not attend the same trade shows as Aura Communications, and does not market to the same consumers.

There is evidence in the record that Aura Networks' products can be purchased over the Internet, even if not directly from the Aura Networks' website,[8] and both companies advertise their products over the Internet. Moreover, both companies advertise for employees in the exact same newspaper; they both seek employees in the technology sector; and they seek employees from the same geographic area. There is little evidence, however, on whether their products are purchased by the same consumers. At minimum, the Parties' channels of trade and methods of advertising are related.

4. See Star Fin., 89 F.3d at 10.

5. (Marshall Second Aff. at ¶ 8.)

6. (Id. at ¶ 12.)

7. See International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 204 (1st Cir.1996).

8. (Marshall Second Aff. at ¶ 14.)

## C. Evidence of Actual Confusion

There is more than sufficient evidence of actual confusion, most of which Aura Networks acknowledges. Such evidence includes testimony from numerous Aura Communications' employees and agents. Below is some of the evidence of the actual confusion.

Tim White, Director of Programs at Aura Communications, stated that he circulated an email to schedule an onsite meeting with a client. The client later called Mr. White to confirm the directions he printed from the company's website. Based on the directions given by the client, Mr. White determined that client had wrongly accessed the Aura Networks website.[9]

Nora Leonard, Aura Communications' Administrator of Sales and Marketing, testified that she received numerous telephone calls from persons intending to call Aura Networks.[10]

Christopher Bunszel, Aura Communications' Strategic Marketing Manager, testified that while running the Aura Communications booth at a consumer-electronics trade show in Las Vegas, Nevada, he was twice approached by people indicating that they thought Aura Communications was Aura Networks.[11]

Confusion includes not only consumer confusion, but confusion by prospective employees.[12] Nicole Jackson, Executive Assistant of Aura Communications, testified that she has received phone calls from persons calling to inquire about the Aura Networks recruitment ad.[13] Ms. Jackson also spoke to a professional recruiter who saw an Aura Networks' advertisement and thought the advertisement was incorrectly printed and should have stated Aura Communications.[14]

Kristen Gelinas, a QoS Staffing, Inc. recruiter hired by Aura Communications, stated that she asked another recruiter to work with Aura Communications.[15] That individual thought Gelinas was calling on behalf of Aura Networks, and told her that she could not work with the company because Aura Networks already had representation.[16]

### d. Intent

 Aura Communications does not make any allegation as to Aura Networks' intent. But assuming Aura Networks acted in good faith, such a finding "may not outweigh other factors that suggest a likelihood of confusion." [17] "Evidence of bad intent, however, while potentially probative of the likelihood of confusion, is simply not required in a trademark infringement case; moreover a finding of good faith is no answer if the likelihood of confusion is otherwise established." [18]

### e. Mark's Strength

 Aura Networks argues that Aura Communications' mark is heavily diluted because the term is ubiquitous, especially in the technology sector. A mark's

---

9. (White Aff. at ¶ 4.)

10. (Leonard Aff. at ¶ 2–4.)

11. (Bunszel Aff. at ¶ 2–3.)

12. *See Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1515 n. 10 (11th Cir.1984).

13. (Jackson Aff. at ¶ 3–4.)

14. (*Id.* at ¶ 2.)

15. (Gelinas Aff. at ¶ 2.)

16. (*Id.* at ¶ 3.)

17. *Star Financial,* 89 F.3d at 11 (internal quotations omitted).

18. *Id.*

strength is "ordinarily measured by such factors as: the length of time a mark has been used; the plaintiff's relative renown in its field; the plaintiff's vigilance in promoting the mark; number of similar registered marks in the field; and the success of other firms in registering similar marks."[19]

 The relevant evidence here shows that Aura Communications has used its mark for over five years, and has expended resources in promoting its mark. Even assuming this evidence only slightly supports this factor, "the strength of the mark is but one of the eight factors to be considered in analyzing the likelihood of confusion issue and sufficient evidence of other factors will sustain a finding of likelihood of confusion."[20]

Based on the similarity of the marks, similarity of the goods, overlap between the Parties' trade channels and advertising, and overwhelming evidence of actual confusion, Aura Communications has demonstrated that Aura Networks' use of its mark has created a likelihood of confusion.

### B. Trade–Name Infringement

 To prove trade-name infringement, the plaintiff generally must show that the defendant used "in commerce any word, term, name, symbol, or device," which is likely to cause confusion as to the affiliation, connection, or association of the plaintiff to the defendant.[21] As stated above, Aura Communications has shown actual confusion resulting from Aura Networks' use of the word "Aura" in its trade name, and thus has shown a likelihood of success on its trade-name-infringement claim.

## II. Irreparable Harm

Aura Communications argues that it will suffer irreparable harm if an injunction does not issue because it will lose control of its reputation and its trademark. It further claims that the reputation of its products in the marketplace and its ability to attract employees will be damaged. Aura Networks counters that Aura Communications only seeks to redress its inability to attract quality employees, and that this type of harm can never be irreparable.

 Where a likelihood of success is established, irreparable harm is presumed.[22] The damage to Aura Communications' reputation and that of its products, combined with the company's inability to attract employees, sufficiently shows irreparable harm, particularly where Aura Communications has shown a likelihood of success on the merits.

## III. Balance of the Hardships

Aura Networks states that should an injunction issue, the company will suffer financial injury. Because all of the company's products are stamped with the company's logo, Aura Networks could not make any shipments, and would have to retool its factory to purge the words "Aura Networks."

 The court recognizes that entering an injunction would financially affect Aura Networks. But there is substantial evidence of ongoing confusion. Additionally, Aura Communications has a federally-registered trademark, and it has used its

---

19. *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 23 (1st Cir.1989).

20. *Star Financial*, 89 F.3d at 11 (internal quotations omitted).

21. 15 U.S.C. § 1125(a).

22. *See Donsky v. Bandwagon, Inc.*, 193 U.S.P.Q. 336, 341 (D.Mass.1976).

trade name for over five years. Aura Networks, on the other hand, changed its name from Lancast, Inc. in October, just eight months ago, and the company has not yet received a federally-registered mark. These facts, in light of the current confusion, tip the hardships in Aura Communications' favor.

## IV. Public Interest

Because Aura Networks' name change is causing confusion, the public interest will best be served if an injunction enters.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is ALLOWED.

ORDER WILL ISSUE.